**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Louis Rex CURTIS,
Defendant-Appellant.**

**No. 74–1098.**

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 10, 1974.

Decided Dec. 10, 1974.

Edward L. Ray, Oklahoma City, Okl. (Stephen Jones and Jones, Williams, Bane, Ray & Klingenberg, Oklahoma City, Okl., with him on the brief), for defendant-appellant.

John E. Green, Asst. U. S. Atty., Oklahoma City, Okl. (William R. Burkett, U. S. Atty., with him on the brief), for plaintiff-appellee.

Before LEWIS, Chief Judge, HILL, Circuit Judge, and CHRISTENSEN, Senior District Judge.*

CHRISTENSEN, Senior District Judge.

Charged in four counts of an indictment, and convicted on each by jury trial, for violating the Mail Fraud Statute, 18 U.S.C. § 1341,[1] appellant Louis Rex Curtis questions on this appeal the sufficiency of the evidence to sustain the verdict and the sufficiency of the indictment to survive his motion to dismiss.[2]

---

* Of the District of Utah, sitting by designation.

1. "§ 1341 . . . Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or arti-

fice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered . . . shall be [punished as provided]."

2. The issues tendered in appellant's initial brief only hit at or around these issues, but

At the close of the government's case a motion for judgment of acquittal for claimed insufficiency of the evidence was submitted to, and ruled upon by, the court adversely to appellant. He thereafter testified in his own behalf and introduced other evidence. Docket entries forming part of the record before us suggest that a similar motion was filed after the close of the trial within the time permitted by Rule 29(c), Fed.R. Cr.P., and denied. A copy of the latter motion has not been brought up. Assuming that it assigned insufficiency of the evidence as a ground,[3] we have carefully studied the transcript and have concluded that the evidence was sufficient to support the verdict.

More to the point of the insufficiency of the indictment, we note some facts which the record tends to support when construed favorably to the verdict and which we gather from the argument the government intended to cover in its charges, or now wishes that it had.[4]

Prior to the date of the first mailing mentioned in the indictment, and continuing until after the last, Curtis devised a scheme and artifice to defraud persons looking for dates or marriages by inducing them in the name of "Computer Matching Institute" to pay substantial fees for computerized and psychologically tested matching, without the intent and capability of performance on his part. The scheme and artifice as devised by Curtis was also to obtain money by means of the following false and fraudulent pretenses, representations and promises, well knowing at the time that the pretenses, representations and promises would be false when made: That by the use of computers arranged for and used by the Computer Matching Institute, a successful and effective organization, and through testing by qualified psychologists, he could and would match by prompt computer processing and expert psychological testing the personal characteristics and preferences of those willing to pay the required fees with other persons similarly processed and tested and likely to prove compatible and willing companions or marriage partners; that references of such matched persons would be promptly made and communicated to the subscribers for their selection or rejection;[5] and that this program had been endorsed by Dr. Joyce Brothers, Dr. Billy Graham, Dr. Norman Vincent Peale, Dr. Crane, and other famous people. The true facts[6] were that

they are stated succinctly and relied upon exclusively in his reply brief. We find no need to discuss fragmented or peripheral contentions which have no merit beyond the basic contentions encompassing them.

3. If not, the record motion interposed at the close of the government's case in chief would have been waived and our consideration of any insufficiency of the evidence normally would have been foreclosed. Lucas v. United States, 355 F.2d 245 (10th Cir.), cert. denied, 384 U.S. 977, 86 S.Ct. 1873, 16 L.Ed.2d 687 (1966); Brooks v. United States, 330 F.2d 757 (10th Cir.), cert. denied, 379 U.S. 852, 85 S.Ct. 100, 13 L.Ed.2d 56 (1964); Hughes v. United States, 320 F.2d 459 (10th Cir. 1963), cert. denied, 375 U.S. 966, 84 S.Ct. 483, 11 L.Ed.2d 415 (1964). Cf. Holmes v. Wack, 464 F.2d 86 (10th Cir. 1972).

4. Ordinarily the conclusion we reach as to the indictment would dispense with the necessity of considering the evidence. Yet this reference to the latter is designed to light up the deficiencies of the indictment.

5. We rejected appellant's argument that since the written contract provided "That you will process my application every 60 days after the first submission of my data to the computer" and the data was not in fact submitted to the computer, there was no breach of the express agreement between the parties. Such "fine print" provisions, exculpatory in nature and here so patently deceptive in view of the evidence of oral representations, are unavailing against the other proof of a scheme to defraud, and do not convert such a scheme into a legitimate business venture. See Gusow v. United States, 347 F.2d 755 (10th Cir.), cert. denied, 382 U.S. 906, 86 S.Ct. 243, 15 L.Ed.2d 159 (1965).

6. We do not mean to indicate necessarily that as a matter of allegations beyond a preceding specification of falsity the true facts would have to be affirmatively alleged; Form 3 of the appendix to the Fed.R.Cr.P. does not so indicate. But for additional clarity they may well be.

the "Computer Matching Institute" at the material times and places was largely a facade and pretense to permit the collection of large sums of money from the public;[7] that appellant at the time of devising such scheme or artifice to defraud, and making such pretenses, representations and promises, and at the time of the mailings in question, did not have the intent or capability of processing or matching applications by computer or testing applicants through the services of a psychologist; that no famous people had endorsed his program, and that any processing and matching to the extent completed and reported at all, unknown to the subscribers, were acomplished by hand by clerical help untrained for the purpose or by 'Curtis himself.[8] And for the purpose of executing such a scheme and artifice to defraud, and attempting to so do, Curtis mailed the letters as charged in the indictment.

These salient facts vital to the government's claim of an unlawful scheme or artifice are masked, if not concealed, by the conclusionary language of the indictment as framed. To render this readily apparent, and to demonstrate fatal departure from Form 3 of the Appendix of Forms annexed to the Federal Rules of Criminal Procedure, on the basis of which the government defends the indictment as meeting the requirements of the controlling rule[9] and the mandate of the Constitution,[10] we juxtaposition the two:

---

Form 3, Fed.R.Cr.P., is ". . . illustrative [of a sufficient indictment] and not mandatory," Rule 58, Fed.R.Cr.P. In pertinent part it reads:

"The grand jury charges:

"1 . . . [T]he defendants . . . devised and intended to devise a scheme and artifice to defraud purchasers of stock of XY Company, a

Count 1 of the indictment in the present case, representative of the other three counts, alleges in pertinent part:

"The Grand Jury charges:

"1 . . . Louis Rex Curtis devised and intended to devise a scheme and artifice to defraud and to obtain money from a class of persons or per-

7. While mailings to only alleged victims were involved in the indictment, the magnitude of Curtis' other operations, legal or otherwise, is indicated by his testimony that he had conducted a $2,000,000 program in various parts of the country.

8. In his brief appellant states: "There can be no doubt that two things accomplished by Rex Curtis were in fact not in conformity to the general organizational plan he had developed. Essentially in a period of time, Computer Matching Institute did not employ the use of computers nor did they employ the use or knowledge of a psychologist." Appellant's brief goes on to state: "However, the facts are unquestionable that he anticipated Dr. Adrean Freyling's coming to Oklahoma City which in essence would have established a computer center and likewise had a psychologist involved in the organization. When this fell through, the evidence is uncontradicted that Rex Curtis instituted a hectic and determined effort to contact and employ computer programmers, computer time and psychologists." In view of appropriate instructions dealing with the defense of good faith and "mere unsuccessful business operations," the jury obviously determined that the absence of

means to make good on the pretenses, representations and promises of appellant was an inherent part of a scheme or artifice to defraud. The evidence tended to show that it was not unavoidable, but intentionally deceptive for the appellant to have failed to reveal any such lack of capability to the subscribers from whom he was soliciting money. As was said in Beck v. United States, 305 F.2d 595 (10th Cir.), cert. denied, 371 U.S. 890, 83 S.Ct. 186, 9 L.Ed.2d 123 (1962), whether a legitimate business venture was involved notwithstanding "was a question of fact, to be determined by the jury after considering all of the evidence and the inferences to be drawn therefrom."

9. "In General. The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Rule 7(c)(1), Fed.R.Cr.P.

10. "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation. . . . " Amendment VI, Constitution of the United States.

California corporation, and to obtain money and property by means of the following false and fraudulent pretenses, representations and promises, well knowing at the time that the pretenses, representations and promises would be false when made: That the XY Company owned a mine at or near San Bernardino, California; that the mine was in actual operation; that gold ore was being obtained at the mine and sold at a profit; that the current earnings of the company would be sufficient to pay dividends on its stock at the rate of six per cent per annum.

"2 . . . [T]he defendants for the purpose of executing the aforesaid scheme and artifice and attempting to do so, caused to be placed in an authorized depository for mail matter a letter addressed to Mrs. Mary Brown, 110 Main Street, Stockton, California, to be sent or delivered by the Post Office Establishment of the United States."

sons to be defrauded, by means of false and fraudulent pretenses, representations and promises to the said class of persons, who could and would be induced by the said . . . Curtis at the times above referred, to pay and send or mail to him certain sums of money in response to false and fictitious representations about the services of a computer matching service for single persons, well knowing at the time that said pretenses and representations would be and were false when made, and which scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises, so devised by . . . Curtis, was in substance as follows:

"1. It was a part of such scheme and artifice to defraud, that . . . Curtis would cause and did prepare and cause to be placed in an authorized depository for mail matter false and fictitious Compatibility Questionnaires, addressed to the persons responding to advertisements about the computer matching service, to be sent and delivered by the Postal Service of the United States.

[Then in successive paragraphs following the same introductory conclusion contained in the last quoted paragraph the indictment specifies (2) The receipt through the mails of "certain checks" in payment on alleged computer matching service, (3) that Curtis rented office space and a post office box to receive the checks "and to lead the individuals to believe that the computer matching service was reputable," (4) that he placed advertisements in various newspapers to solicit business, and (5) that he contracted "for services he did not provide." The next paragraph contains the most specific, but still excessively general reference to a scheme; but this obviously is a "lulling scheme" and not the one relied upon to render other mailings unlawful.]

"6. And it was a further part of said scheme and artifice to defraud

that . . . Curtis would and did falsely and fraudulently cause to be mailed letters . . . containing misrepresentations about the computer service, management, Investigating Department, and alleged invoices for computer service work, for the purpose of lulling or soothing the complaints of persons who had paid for services not provided by Computer Matching Institute.

"7 . . . Curtis, for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises willfully and knowingly did cause to be deposited in an authorized mail depository . . . mail matter containing a false and fraudulent Compatibility Questionnaire for Dating and Marriage addressed . . . all in violation of Section 1341, Title 18, United States Code."

---

What the "scheme and artifice to defraud", or the "false and fraudulent pretenses, representations and promises" referred to in the indictment were, is left to speculation. And by the curious comminglement of references to the scheme with allegations of various means utilized to carry it out, the indictment is confusing as well as vague. Certainly the compatibility questionnaire, the post office box, the business office, the checks or their receipt, were not "false or fictitious" per se. The enumeration of acts in implementation of some scheme or artifice, but under the allegations that they were themselves "in substance" such a scheme and "part of it" did more to mask what the misrepresentations, scheme or artifice were claimed to have been than to explain them. The indication and place provided in the official form for specification or identification of the claimed false pretenses, representations and promises were disregarded in the indictment before us.

■ For all the indictment shows the grand jury may have had a concept of the scheme essentially different from that relied upon by the government before the trial jury. And under the general and confusing allegations of the indictment the trial jury could have conceived the scheme as something essentially different from that upon which the government now relies. Instructions cannot save a bad indictment, although in some cases they may ameliorate the prejudice. Here the case was submitted, and perhaps necessarily so, in the broad language of the indictment. The trial court accurately and fairly enumerated the issues, defined the terms employed in the statute and charges, and stated the governing rules in the abstract. It did not undertake to limit the scope of the scheme or artifice in question short of the vague language of the indictment, which it read to the jury in full.

■ Mere evidential matters or detail more appropriate in bills of particular need not be pleaded in an indictment based upon § 1341. Stokes v. United States, 157 U.S. 187, 15 S.Ct. 617, 39 L.Ed. 667 (1895); Sullivan v. United

States, 411 F.2d 556 (10th Cir. 1969); Martin v. United States, 285 F.2d 150 (10th Cir. 1960), cert. denied, 365 U.S. 853, 81 S.Ct. 818, 5 L.Ed.2d 816 (1961); Webb v. United States, 191 F.2d 512 (10th Cir. 1951); United States v. Crummer, 151 F.2d 958 (10th Cir. 1945), cert. denied, 327 U.S. 785, 66 S.Ct. 704, 90 L.Ed.2d 1012 (1946); Rude v. United States, 74 F.2d 673 (10th Cir. 1935); Havener v. United States, 49 F.2d 196 (10th Cir.), cert. denied, 284 U.S. 644, 52 S.Ct. 24, 76 L.Ed. 547 (1931). See also United States v. Anderson, 447 F.2d 833 (8th Cir. 1971), cert. denied, 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (1972); Wolpa v. United States, 86 F.2d 35 (8th Cir. 1936), cert. denied, 299 U.S. 611, 57 S.Ct. 317, 81 L.Ed. 451 (1937); Giles v. United States, 34 F.2d 110 (8th Cir. 1929); Brady v. United States, 24 F.2d 397 (8th Cir.), cert. denied, 278 U.S. 603, 49 S.Ct. 10, 73 L.Ed. 531 (1928); Savage v. United States, 270 F. 14 (8th Cir. 1920), cert. denied, 257 U.S. 642, 42 S.Ct. 52, 66 L.Ed. 412 (1921).

■ But as these cases demonstrate, some substantial indication of the nature or character of any scheme or artifice to defraud, or to obtain money or property by means of false pretenses, representations or promises is requisite. And it is not sufficient in this regard to merely plead the statutory language. *Cf.* Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); Lowenburg v. United States, 156 F.2d 22 (10th Cir. 1946). A reference to the cases cited first above will disclose that in each instance the nature of the schemes or artifices is identified or described, including the particular pretenses, representations or promises claimed to have been false. For example, in United States v. Crummer, *supra*, the allegations of the scheme held to be sufficient had been in such detail as to require almost two printed pages of the opinion to abstract. Yet the court carefully examined the problem of sufficiency of allegations in mail fraud cases and observed:

> The offense charged in the indictment is composed of two constituent elements. They are a scheme devised or intended to be devised to defraud, or for obtaining money or property by false or fraudulent pretenses, representations, or promises, and the use of the mails for the purpose of executing the scheme or attempting to do so. In other words, to constitute the offense a scheme to defraud must be devised and thereafter a letter, postal card, package, writing, circular, pamphlet, or advertisement must be placed in the mails for the purpose of executing the scheme, or attempting to do so. [Citations omitted.]

> . . . While the particulars of the scheme are matters of substance and therefore must be described with a degree of certainty sufficient to show its existence of character, and fairly to acquaint the defendant with the particular fraudulent scheme charged against him, still the scheme itself need not be pleaded with all the certainty in respect of time, place, and circumstance requisite in charging the mailing of the letter or other matter. [Citations omitted.]

It was stated in Smith v. United States, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959), and reiterated with terminal effect upon the indictment in Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), *supra*:

> This Court has, in recent years, upheld many convictions in the face of questions concerning the sufficiency of the charging papers. Convictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused. [Citing cases.] . . . But the substantial safeguards to those charged with serious crimes cannot be eradicated under the guise of technical departures from the rules.

*Russell* involved a violation of a statute making it a misdemeanor for any person summoned to testify before a committee of Congress to refuse to answer "any question pertinent to the question under inquiry." The indictment there alleged in the words of the statute that the questions asked "were pertinent to the questions then under inquiry."

While the facts were different, principles explicated and applied by *Russell* have controlling application here. The opinion quotes from United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588:

"It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars.'"

It then continues:

An indictment not framed to apprise the defendant "with reasonable certainty, of the nature of the accusation against him . . . is defective, although it may follow the language of the statute." United States v. Simmons, 96 U.S. 360, 362 [, 24 L.Ed. 819]. "In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished; . . .." United States v. Carll, 105 U.S. 611, 612 [, 26 L.Ed. 1135]. "Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." United States v. Hess, 124 U.S. 483, 487 [, 8 S.Ct. 571, 31 L.Ed. 516]. See also Pettibone v. United States, 148 U.S. 197,

202–204 [, 13 S.Ct. 542, 545, 37 L.Ed. 419]; Blitz v. United States, 153 U.S. 308, 315 [, 14 S.Ct. 924, 927, 38 L.Ed. 725]; Keck v. United States, 172 U.S. 434, 437 [, 19 S.Ct. 254, 255, 43 L.Ed. 505]; Morissette v. United States, 342 U.S. 246, 270, n. 30 [, 72 S.Ct. 240, 253, 96 L.Ed. 288]. *Cf.* United States v. Petrillo, 332 U.S. 1, 10–11 [, 67 S.Ct. 1538, 1543, 91 L.Ed. 1877] [distinguishing in footnote 12 Rosen v. United States, 161 U.S. 29, 16 S.Ct. 434, 40 L.Ed. 606, on the ground that details omitted there were too obscene to be spread upon the minutes of the court.] That these basic principles of fundamental fairness retain their full vitality under modern concepts of pleading, and specifically under Rule 7(c) of the Federal Rules of Criminal Procedure, is illustrated by many recent federal decisions [citing in footnote 13 United States v. Lamont [2 Cir.] 236 F.2d 312; Meer v. United States [10 Cir.] 235 F.2d 65; [11] Babb v. United States [5 Cir.] 218 F.2d 538; United States v. Simplot [D.C.] 192 F.Supp. 734; [11] United States v. Devine's Milk Laboratories, Inc. [D.C.] 179 F.Supp. 799; United States v. Apex Distributing Co. [D.C.] 148 F.Supp. 365.]

This is not a case where a trial has been had without any claim being made concerning the insufficiency of the indictment, in which event a view is sometimes taken more generous to a questionable indictment than has been applied where the attack on the indictment has been timely. Almost a month prior to trial appellant interposed and submitted arguments in support of a motion for judgment of acquittal setting out valid reasons why the indictment was insufficient.[12]

11. If not of much significance to the reader, it is at least interesting to the writer to recall that of the six cases cited by the Supreme Court on this point he has been connected with two of them and that the lesson learned from his reversal by this court in the first, holding that an indictment was invalid, was applied by him in the second with similar effect upon the indictment there.

12. "4. Each count of the indictment alleges conclusions distinguished from statements of ultimate fact and therefore does not state

facts with sufficient certainty to apprise the Defendant of the nature of the accusations required by the Sixth Amendment of the United States Constitution, to enable him to prepare his defense thereto." Failure to comply with the requirements of Rule 7(c)(1) was not assigned in the motion, but in the supporting brief it was asserted and argued that "[a]s the indictment clearly does not comport to Rule 7(c) of the Federal Rules of Criminal Procedure, it cannot stand, and a judgment of acquittal should be granted herein."

■ In sum, the indictment here, after all has been said and done, pleads little more than the statutory language without any fair indication of the nature or character of the scheme or artifice relied upon, or the false pretenses, misrepresentations or promises forming a part of it. To the contrary, the surplusage set out in connection with allegations of mailing, and the masking of acts, documents or conduct innocuous in themselves by appellations of "falsity" did more to confuse than to clarify. The trial court's instructions, however accurate, could not have resuscitated these fatally defective charges, but the difficulty was not ameliorated if, indeed, it was not compounded by their generality. Under the circumstances indicated we can see no alternative to the reversal of the judgment below for lack of sufficient averments in the indictment to satisfy constitutional requirements; manifestly it did not comport with Rule 7(c)(1).

Reversed and remanded with directions to dismiss the present indictment.