51 F.3d 287
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff/Appellee,
v.
Tracy PROWS and David J. Morrissey, Defendants/Appellants.
 Nos. 93-4181, 93-4183.
 United States Court of Appeals, Tenth Circuit.
 March 28, 1995.
 
 1
 D.Utah, Central Division, D.C. No. 91 CR 49J.
 
 
 2
 Edward M. Garrett, (James D. Garrett with him on the brief) Garrett & Garrett, Salt Lake City, Utah, for defendant-appellant Prows.
 
 
 3
 Michael L. Adkins, Salt Lake City, Utah, for defendant-appellant Morrissey.
 
 
 4
 Richard D. McKelvie, Asst. U.S. Atty., (Scott M. Matheson, Jr., U.S. Atty. with him on the brief) Salt Lake City, Utah, for plaintiff-appellee.
 
 
 5
 D.Utah, 989 F.2d 508.
 
 
 6
 AFFIRMED.
 
 Before SEYMOUR, BALDOCK, and VAZQUEZ[1]
 ORDER AND JUDGMENT[2]
 
 7
 VAZQUEZ, District Court Judge.
 
 
 8
 Defendant Tracy Prows was convicted by a jury of mail fraud, wire fraud, and aiding and abetting, in the District Court of Utah, Central Division. Defendant David J. Morrissey was convicted under the same indictment of wire fraud and aiding and abetting.[3] After conviction, but prior to sentencing, defendants each moved for a new trial and it was denied by the trial court. After obtaining new counsel, Defendant Prows moved to dismiss or in the alternative for a new trial. Defendant Morrissey joined in the motion. The trial court denied the motion to dismiss and granted the motion for a new trial. The government motioned the court to reconsider its ruling, and that motion was denied. The government appealed and this Court reversed the lower court's order on the basis that pursuant to Rule 33 of the Federal Rules of Criminal Procedure the trial court no longer had jurisdiction to grant a new trial because more than seven days had elapsed since the jury's verdict was returned.[4] The case was remanded for sentencing. After sentencing defendants filed this appeal.[5]
 
 
 9
 Defendants were charged with devising and intending to devise a scheme and artifice to defraud and for obtaining property from WordPerfect Corporation of Orem, Utah, by means of false and fraudulent pretenses, representations, and promises.[6]
 
 
 10
 Defendant Prows' appellate brief sets forth the following five issues for consideration by this Court: (1) sufficiency of the indictment; (2) sufficiency of the evidence; (3) whether the district court erred in failing to direct a verdict at the close of the government's case or erred in not granting a new trial; (4) ineffective assistance of counsel; and (5) whether a proper sentence was imposed.
 
 
 11
 Defendant Morrissey seeks a new trial under Rule 52(b) of the Federal Rules of Criminal Procedure, alleging that the jury instructions improperly expanded the indictment charges against him.[7] His argument is virtually identical to one made by Defendant Prows regarding the district court's failure to grant a new trial. Because defendants make the same challenge and rely on virtually the same authority with respect to this issue, it will be addressed first.
 
 
 12
 I. Jury Instructions.
 
 
 13
 Defendants contend that the jury instructions improperly expanded the scope of the indictment by requiring them to defend against an uncharged scheme to obtain "money or property" where the indictment only charged a scheme to obtain "property." They argue that this error entitles them to a new trial.
 
 
 14
 A. New trial based on improper expansion of indictment in jury instructions.
 
 
 15
 After an indictment has been returned, its charges may not be broadened through amendment except by the grand jury. Stirone v. United States, 361 U.S. 212, 215-16 (1960). Any amendment effectuated by the court's instructions would constitute plain error and be reversible per se. United States v. Phillips, 869 F.2d 1361, 1364-65 (10th Cir.1988), cert. denied, 490 U.S. 1069 (1989). When reviewing a claim of error relating to jury instructions, the instructions must be read and evaluated in their entirety and reversal is warranted only if an error is prejudicial in light of the entire record. United States v. Denny, 939 F.2d 1449 (10th Cir.1991).
 
 
 16
 Defendants rely on United States v. Murphy, 836 F.2d 248 (6th Cir.1988), cert. denied, 488 U.S. 924 (1988), in arguing that the jury instructions improperly expanded the indictment issued against him. In Murphy, the Sixth Circuit held that a jury charge which required the defendant to defend against an uncharged scheme or artifice to obtain money by false pretenses, representations or promises, improperly expanded the indictment, warranting reversal. Id. The indictment charged the defendant with devising a scheme or artifice "to defraud the state of Tennessee of the right to issue certificates of registration to charitable organizations to conduct bingo games, based on complete, true and accurate information to be provided by those applying for said permits." Id., 836 F.2d at 251.
 
 
 17
 The Murphy court held that the indictment only alleged an intangible right and failed to charge a scheme or artifice to obtain money or property as required under the mail fraud statute. Id. at 254 (citing McNally v. United States, 483 U.S. 350 (1987)).[8] The jury instructions, however, referred to a charge to obtain money and by doing so expanded the indictment. Id.
 
 
 18
 Defendants misconstrue Murphy by failing to acknowledge that the basis for the court's determination that the jury instructions expanded the indictment was that the property right alleged in the indictment was intangible; whereas, in the instructions the property right identified was tangible, i.e., money.[9]
 
 
 19
 Here, unlike Murphy, the indictment does not deal with an intangible right that is wrongfully expanded to a tangible right in the jury instructions. Thus, the central basis underlying the Murphy Court's determination that the jury instructions were improper is not present here and, therefore, Murphy does not advance the defendants' position.
 
 
 20
 Moreover, the indictment in this case was not expanded by the lower court's jury instructions because the indictment, like the jury instructions themselves, referred to both money and property. The defendants point to only one portion of the indictment in arguing that they were charged with seeking to obtain only property and not money. They refer to paragraph five (5) of the indictment which charges them with seeking to obtain "property from Wordperfect Corporation by means of false and fraudulent pretenses, representations, and promises. Indict. at para. 5 (emphasis added). However, the indictment goes on at paragraph eleven (11) to state that the defendants stood to earn a profit through the alleged scheme, by reselling WordPerfect's software at a higher price than what they paid for it. The indictment alleged the precise amount of money that the defendants stood to gain from the scheme: "the site license provided for the purchase of Wordperfect software for $100.00 per copy; Baker made arrangements to sell the copies for $140.00 to $145.00 each. WordPerfect normally sells copies directly to retailers (as opposed to site licensees) for $198.00 per copy." Indict. at para. 11.
 
 
 21
 Charging documents are tested by whether they apprise the defendant of what evidence he must be prepared to meet, and an indictment should be read in its entirety, construed according to common sense and interpreted to include facts which are necessarily implied. See Phillips, 869 F.2d at 1364 (quoting United States v. Martin, 783 F.2d 1449, 1952 (9th Cir.1986)).
 
 
 22
 The indictment issued in this case, read as a whole, clearly apprised the defendant that he was charged with seeking to obtain money and/or property from WordPerfect Corporation. The jury instructions accordingly referred to both money and property in stating the elements of the offense with which defendant was charged.
 
 
 23
 This Court finds the jury instructions did not improperly expand the indictment and the lower court did not commit plain error by submitting them to the jury.
 
 
 24
 B. Instructions do not specifically define the scheme, victim, or property.
 
 
 25
 Defendant Prows makes an additional argument that the instructions do not specifically define either the scheme, the victim, or the property, as called for in McNally, 483 U.S. 350, and United States v. Shelton, 848 F.2d 1485 (10th Cir.1988).[10]
 
 
 26
 In Shelton, two county commissioners were charged with violating the mail fraud statute by receiving kickbacks in connection with county purchases, and thereby depriving citizens of the intangible right to honest government. Shelton, 848 F.2d at 1492. The government did not charge that the county itself lost money because of the kickbacks. Id. at 1491. Therefore, that portion of the indictment was struck down for failing to allege a mail fraud violation under McNally. Id. at 1493. However, the indictment included a proper mail fraud charge against one of the commissioners alleging that he deprived the county of money/property by receiving kickbacks on items which the county paid for but never received. Id. at 1495. That charge met the McNally requirements; therefore, the court went on to examine the jury instructions.
 
 
 27
 The jury instructions were found inadequate because they failed to adequately identify the victim of the alleged scheme and failed to clarify that the victim had to be deprived of money or property. These flaws stemmed from the deficient indictment. The Shelton court looked to the jury instructions for clarification of the requisite elements of a mail fraud violation and found the instructions failed.
 
 
 28
 The court stated "under McNally, instructions on the elements of mail fraud must require the jury to find that the victim of the scheme was itself defrauded of money or property." Id. (emphasis added). The court determined that the jury instructions improperly stated that a "scheme" includes any plan by which the victim loses money or property, because use of the open-ended word "includes" did not require the jury to find such a loss. Id. at 1496. In addition, the jury instructions failed to require that the money or property come from the alleged victim. Id.
 
 
 29
 The instructions did not distinguish between the intangible right to honest government and money or property. The instructions failed to clarify to the jury that a loss of money or property is necessary in order to convict on a mail fraud charge. Id. at 1496. By failing to make this clear in the instructions, the possibility existed that the defendant was convicted of depriving the county of the intangible right to honest government which is not an offense under the mail fraud statute. Id.
 
 
 30
 Defendant Prows argues that because the instructions given in this case are similar to those held insufficient in Shelton, they fail. However, the Shelton court's criticisms of the instructions were particular to the facts of that case and were based on the finding that both an intangible right and a tangible money/property right were alleged in the indictment. The instructions failed to save the partially deficient indictment by clarifying the necessary elements which had to be met in order to find the defendant guilty. The Shelton court did not mandate more stringent requirements for structuring mail fraud jury instructions as Defendant Prows' reliance on it implies.
 
 
 31
 Here, the indictment clearly identified WordPerfect Corporation as the alleged victim of the scheme or artifice to defraud and the indictment was made part of the lower court's jury instructions. The indictment does not charge an intangible right. The defendants were properly charged with devising a scheme or artifice to deprive WordPerfect Corporation of its tangible property rights. The instructions set forth the necessary elements of both the mail and wire fraud statutes and there "is no possibility that the jury convicted the defendant without a finding that his scheme was intended to deprive [WordPerfect] of money or property." See United States v. Stewart, 872 F.2d 957, 960 (10th Cir.1989). Thus, Defendant Prows' additional argument fails. The defendant was not prejudiced by the lower court's jury instructions.
 
 
 32
 II. Sufficiency of the Indictment.
 
 
 33
 Defendant Prows next contends that the indictment issued against him does not state a crime. He urges that it fails to describe and define the scheme or artifice to defraud or to disclose the nature of the property that would be lost to WordPerfect by the scheme or artifice. Defendant Prows did not make this challenge until after he was found guilty.
 
 
 34
 Where there was no objection to the evidence, the instructions, or the indictment at trial, the court, in order to preserve judicial efficiency, must construe any ambiguities in the indictment in favor of validity. Phillips, 869 F.2d at 1364-65.
 
 
 35
 Sufficiency of an indictment depends upon whether it contains the elements of the offense sought to be charged, apprises the defendant of the charges he must meet, and affords protection against the risk of double jeopardy in the event of conviction. United States v. Walker, 947 F.2d 1439, 1441 (10th Cir.1991).
 
 
 36
 Specifically, an indictment charging a violation of the mail fraud statute (18 U.S.C. 1341)[11] must contain some substantial indication of the nature or character of any scheme or artifice to defraud, or to obtain money or property by means of false pretenses, representations or promises. United States v. Curtis, 506 F.2d 985 (10th Cir.1974).
 
 
 37
 The particulars of a scheme are matters of substance and, therefore, must be described with a degree of certainty sufficient to show its existence of character and fairly to acquaint the defendant with the particular fraudulent scheme charged against him. Id. at 990 (quoting United States v. Crummer, 151 F.2d 958 (10th Cir)), cert. denied, 327 U.S. 785 (1946). It is not sufficient to merely plead the statutory language. Id. Defendant argues that under Curtis, the indictment issued against him fails. This Court disagrees.
 
 
 38
 In Curtis, this Court found that the indictment failed to make clear what the scheme or artifice to defraud or the false and fraudulent pretenses were because it only alleged those terms in conclusory fashion. 506 F.2d at 989. The indictment pled little more than the statutory language without any fair indication of the nature or character of the scheme or artifice relied upon, or the false pretenses, misrepresentations or promises forming a part of it. Id. at 992.
 
 
 39
 However, in Stewart, relied on by the government, this Court found an indictment alleging "that the defendant devised a scheme to obtain money or property from his intended victim by means of false pretenses, representations or promises, and that he used the U.S. mails for the purpose of executing or furthering the scheme" was sufficient to state an offense under Sec. 1341. 872 F.2d at 959.
 
 
 40
 The indictment in this case contains a heading entitled, "Scheme and Artifice," which is followed by seven paragraphs (numbered 5 through 14) which set out the specific facts in support of the alleged scheme and artifice and include factual allegations of false and fraudulent pretenses. It is clear that the factual basis required in Curtis and the statutory elements deemed sufficient in Stewart were both present here.
 
 
 41
 The case now before the Court clearly involved a scheme relating to property rights. The indictment makes it clear that the object of the scheme was to obtain low-priced computer software from WordPerfect by means of false representations. The effect of the scheme, had it been successful, would have been to directly deprive WordPerfect of software and indirectly of profit, which it would have received on sales of the software to retail buyers. See Stewart, 872 F.2d at 959. A scheme where the accused intends to gain money or property at the expense of the victim of the scheme is clearly within the purview of the mail fraud statute. Id.
 
 
 42
 Defendant Prows submits that the indictment did not specify the nature of the property sought to be obtained and he makes much of the government's failure to pinpoint whether property or money was at stake. This position ignores the obvious. Money is property, and although the defendant attempted to persuade the Court otherwise, he was not successful.
 
 
 43
 The indictment issued against Defendant Prows is sufficient. It contains the elements of the mail and wire fraud statutes, apprises him of the charges he had to defend against, and affords him the protection against the risk of double jeopardy. See United States v. Walker, 947 F.2d at 1441.
 
 
 44
 III. Whether the district court erred in failing to direct a verdict.
 
 
 45
 At the close of the government's case, Defendant Prows moved for a Judgment of Acquittal.[12] The trial court withheld ruling on the motion and failed to rule thereafter. Defendant is correct that it was error for the trial judge to withhold ruling on the motion, but this error does not require reversal. See United States v. Thomas, 987 F.2d 697 (11th Cir.1993) (district courts are not permitted to reserve ruling on Rule 29 Motions made at the close of the government's case in chief, but when a district court erroneously defers ruling on the motion and the defendant presents evidence, the appellate court, in reviewing the sufficiency of the evidence, will only consider the evidence presented in the government's case in chief); accord Montoya v. United States, 402 F.2d 847, 849 (5th Cir.1968). United States v. Rhodes, 631 F.2d 43, 44. (5th Cir.1980).
 
 
 46
 We have reviewed the evidence presented in the government's case in chief and find that, because there was sufficient evidence to sustain a conviction, allowing the case to go to the jury was not reversible error.
 
 
 47
 Defendant Prows separately challenges the sufficiency of the evidence arguing that the government did not prove beyond a reasonable doubt that he committed a crime.
 
 
 48
 IV. Sufficiency of the Evidence.
 
 
 49
 A judgment of conviction must be affirmed if there exists record evidence from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt of the crime charged. United States v. Young, 862 F.2d 815 (10th Cir.1988). Our review of the record must be in the light most favorable to the jury's verdict. Denny, 939 F.2d at 1451.
 
 
 50
 Defendant Prows first argues that there was no evidence that the "purported purchase of WordPerfect software was illegal." However, proving the illegality of conduct underlying a mail or wire fraud offense is not an element of either the mail or wire fraud statute. The statute is violated when the following two elements have been proved: first, when the conduct is determined to be in furtherance of a scheme to defraud or obtain money or property by false or fraudulent pretenses, representations and promises; second, when the mails (or wire communication) are used for the purpose of executing or furthering that scheme. Stewart, 872 F.2d at 959; 18 U.S.C. Secs. 1341 & 1343.
 
 
 51
 Defendant Prows concedes in his appellate brief that "all of the evidence presented by the government is directed solely to the concept that defendants intended to resell the product at a profit, thereby denying WordPerfect of its right to the money that it would otherwise have received had it sold the product itself." Defendant also acknowledges that a fictitious name was used and erroneously states that this fact is not significant. See Stewart, 872 F.2d at 961 (evidence that an alias was used in relevant transactions supports guilty verdict in mail fraud case).
 
 
 52
 Thus, defendant appears to concede that evidence was presented on at least the first element under the statutes.
 
 
 53
 With respect to the second element, a review of the record establishes that there was ample evidence from which a rational juror could find that Defendant Prows used or caused to be used the mails and wire communications in furtherance of the scheme to defraud to obtain money by means of false pretenses, representations or promises.
 
 
 54
 Thus, the Court finds sufficient evidence was presented for a rational juror to convict the defendant of wire and mail fraud.
 
 
 55
 V. Ineffective Assistance of Counsel.
 
 
 56
 Defendant Prows, with new counsel, alleges on direct appeal that he was denied effective assistance of counsel, warranting a new trial.
 
 
 57
 The preferred avenue for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack under 28 U.S.C. Sec. 2255.[13] Beaulieu v. United States, 930 F.2d 805, 806 (10th Cir.1991). This is so in part because ineffectiveness claims frequently require consideration of evidence not contained in the record on direct appeal. Id. Requiring that ineffective assistance of counsel claims be raised at the district court level "encourages development of a record on the tactical reasons for trial counsel's decisions and the extent of trial counsel's alleged deficiencies, and the asserted prejudicial impact on the outcome of the trial." Id. at 807.
 
 
 58
 This Court indicated in Beaulieu that it will consider ineffective assistance of counsel claims on direct appeal only in instances where the factual record was sufficiently developed in post-trial proceedings in the district court or where the ineffectiveness claim is based solely on matters found in the trial record. Id.
 
 
 59
 Defendant Prows contends that his trial counsel failed to adequately investigate his case, failed to call a crucial rebuttal witness, failed to introduce relevant evidence, failed to object to improper jury instructions, and otherwise failed to properly protect his interests at trial. The merit of these serious allegations cannot be determined on the basis of the trial record alone. Nor was a sufficient record developed in a post-trial proceeding in the district court. Thus, this Court cannot review Prows' claim on direct appeal and will remand the case to the district court for a development of the record and consideration under 21 U.S.C. Sec. 2255.
 
 
 60
 VI. Sentencing Issue.
 
 
 61
 Defendant Prows contends that the trial court erred in applying a concept of loss from the United States Sentencing Guidelines in imposing his sentence because WordPerfect did not sustain a loss.
 
 
 62
 This Court reviews a district court's application of the Sentencing Guidelines to the facts under a due deference standard and questions of law are reviewed de novo. United States v. Shewmaker, 936 F.2d 1124 (10th Cir.1991), cert. denied, 112 S.Ct. 884 (1992).
 
 
 63
 This Court has clearly held that intended or probable loss may be used to enhance a sentence. As stated in United States v. Smith, 951 F.2d at 1164, 1166 (10th Cir.1991), the Guidelines increase a defendant's base offense level sentence for either actual or intended loss, whichever is greater. Where there is no actual loss, or where actual loss is less than the loss the defendant intended to inflict, intended or probable loss may be considered. Id. (citing Application Note 7 of the Guidelines Sec. 2F1.1).
 
 
 64
 Defendant's contention that loss should not have been used to enhance his sentence because WordPerfect did not actually lose anything is expressly contradicted in Smith, where this Court stated "the district court need not find an actual loss to increase a defendant's offense level under section 2F1.1," the reasoning being that the fact that good police work diminished the actual loss to the victim should not affect the determination of the extent of a defendant's culpability and responsibility for purposes of sentencing. 951 F.2d at 1168.
 
 
 65
 Defendant relies on U.S. v. Kopp, 951 F.2d 521 (3rd Cir.1991), in arguing that only actual loss and not potential loss should be considered in a sentencing enhancement. That contention is not supported in Kopp and, in fact, is expressly contradicted: "if a probable or intended loss that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the actual loss." 951 F.2d at 527.
 
 
 66
 The trial court did not err in applying the concept of loss under the Guidelines in sentencing Defendant Prows.
 
 CONCLUSION
 
 67
 We have examined the record and, finding no error, we affirm the judgments and the convictions entered against Defendants Prows and Morrissey, but remand Defendant Prows' claim of ineffective assistance of counsel to the trial court for a development of the record and consideration under 28 U.S.C. Sec. 2255.
 
 
 
 [1]
 The Honorable Martha Vazquez, United States District Judge for the District of New Mexico, sitting by designation
 
 
 [2]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order, filed November 29, 1993. In re Citation of Unpublished Opinions/Orders & Judgments, 151 F.R.D. 470 (10th Cir.1993)
 
 
 [3]
 Defendant Prows was convicted of one count of mail fraud (Count I) and three counts of wire fraud (Counts V, VII, and VIII). Defendant Morrissey was convicted of two counts of wire fraud (Counts VII and VIII)
 
 
 [4]
 Fed.R.Crim.P. 33 states: "A motion for a new trial based on any other grounds [other than newly discovered evidence] shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period."
 
 
 [5]
 Defendant Prows was sentenced to prison for 15 months to be followed by two years probation. Defendant Morrissey was sentenced to 12 months followed by two years probation
 
 
 [6]
 Prows was charged with mail and wire fraud and Morrissey was charged with only wire fraud, but the two statutes have a virtually identical analysis. See United States v. Herron, 825 F.2d 50, 54 n. 5 (5th Cir.1987)
 
 
 [7]
 Fed.R.Crim.P. 52(b) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 
 
 [8]
 In McNally, the Supreme Court held that the mail fraud statute is limited in scope to the protection of property rights and does not prohibit schemes to defraud citizens of the intangible right to honest and impartial government. Accordingly, the Court went on to find that the district court's jury instructions permitted a conviction for conduct not within the reach of the statute. 483 U.S. at 361
 The McNally decision was expanded in Carpenter v. United States, 484 U.S. 19 (1987), to also apply to the wire fraud statute.
 
 
 [9]
 The court rejected the government's argument that a certificate of registration (the bingo license) was a property right rather than an intangible right. The court reasoned that the certificates might be property once issued, but whether issued or not, they were not the property of the state, but instead would be property of the charitable organization who obtained the certificate. Id
 
 
 [10]
 Shelton primarily dealt with whether McNally should be given retroactive effect in a Sec. 2255 proceeding in this circuit. 848 F.2d at 1489-90
 
 
 [11]
 The statute reads: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing or knowingly causes to be delivered by mail ... shall be (punished as provided)."
 
 
 [12]
 Specifically, counsel for defendant incorrectly termed the motion one for a Directed Verdict, but we will consider it as a Motion for Judgment of Acquittal
 
 
 [13]
 28 U.S.C. Sec. 2255 states: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."