UNITED STATES of America,
Plaintiff,

v.

Viken KEUYLIAN, Defendant.

Case No. SACR 13–00047–CJC.

United States District Court,
C.D. California,
Southern Division.

Signed June 2, 2014.

Gregory W. Staples, AUSA, Santa Ana, CA, for Plaintiff.

Craig Wilke, Esq., Fullerton, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

CORMAC J. CARNEY, District Judge.

### I. INTRODUCTION

Defendant Viken Keuylian is charged with a single count of wire fraud in violation of 18 U.S.C. § 1343. The Indictment alleges that Mr. Keuylian, the owner of two Lamborghini dealerships in Southern California, engaged in a scheme to defraud Volkswagen Credit Inc. ("VCI") by selling 54 cars with the intent to not pay back the $12.6 million VCI advanced to finance his purchase of the cars. Mr. Keuylian now challenges the sufficiency of the Indictment. (Dkt. No. 16 ["Mot. Dismiss"].) Aside from its recitation of the statutory language, the Indictment fails to allege any affirmative act of deception, and also fails to allege that VCI was ever deceived. The Indictment therefore does not allege the essential facts of a "scheme or artifice to defraud" necessary to properly inform Mr. Keuylian of the nature of the wire fraud charge against him. Accordingly, Mr. Keuylian's motion to dismiss the Indictment is GRANTED.

## II. BACKGROUND

Mr. Keuylian owned and controlled two authorized Lamborghini dealerships, which did business under the names Lamborghini of Orange County and Lamborghini of Calabasas. (Dkt. No. 1 ["Indictment"] ¶ 1.) Most of the Lamborghinis on Mr. Keuylian's lots were purchased using funds VCI advanced by means of a flooring line of credit. (*Id.* ¶ 2.) Under written agreements between VCI and the dealerships, VCI advanced money to its affiliated factory, Automobili Lamborghini SpA, to purchase new Lamborghinis for sale at Mr. Keuylian's dealerships. (*Id.*) The Indictment alleges that as each car was sold, Mr. Keuylian was obligated to pay VCI back the money it advanced plus interest for that specific vehicle. (*Id.*).

The Indictment alleges a scheme to defraud VCI of money it had advanced as follows:

3. At a time unknown to the Grand Jury, but beginning sometime before October 2008, defendant experienced cash flow problems and began selling cars without notifying VCI or paying VCI for the cars. Beginning in at least October 2008, defendant knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts, by selling a large number of cars subject to the flooring line of credit with VCI with the intent to defraud VCI of money it was owed under the flooring line of credit.

(*Id.* ¶ 3.) In all, the Indictment alleges that Mr. Keuylian deprived VCI of approximately $12.6 million that VCI had advanced for the purchase of 54 cars. (*Id.* ¶ 4.) The Indictment alleges that Mr. Keuylian sold the 54 cars at a loss and then did not use any of the proceeds from the sale of the cars to pay VCI the money it advanced to purchase the cars. (*Id.*) Instead, the Indictment alleges, Mr. Keuylian took some of the sales proceeds and used them to pay balances he still owed to VCI for the purchase of other cars. (*Id.*)

This is the second criminal case filed against Mr. Keuylian arising out of his sale of the same 54 cars. In 2009, the Government filed an Information charging Mr. Keuylian with one count of wire fraud. (*See* Case No. SACR 09–00056–CJC ["2009 Case"], Dkt. No. 1 ["2009 Information"].) Although there is substantial overlap between the 2009 Information and the Indictment here, the 2009 Information contained some allegations not found in the present Indictment. For example, unlike the Indictment here, the 2009 Information alleged that Mr. Keuylian "deceived VCI into believing that certain cars VCI had loaned defendant KEUYLIAN the money to purchase that were subject to a security interest were still unsold, when in truth and in fact, as defendant KEUYLIAN well knew, these cars had been sold." (*Id.* ¶ 3.) The 2009 Indictment also alleged that Mr. Keuylian began to engage in a scheme to defraud no later than September 2007, more than a year before the start date of the scheme alleged here. (*See id.* ¶ 6.)

Although Mr. Keuylian initially pleaded guilty to the 2009 Information, he withdrew his plea after evidence came to light that VCI officials were aware that he had been using proceeds from the sale of the 54 cars to repay loans to VCI on previously sold cars. (*See* Mot. Dismiss at 7 n. 4.) Mr. Keuylian asserts—and the Government does not dispute—that the Government confirmed with the Chief Operating Officer of Lamborghini SpA's American distributor that VCI had been aware that Mr. Keuylian was out of trust on VCI's advances but had been trying to help Mr. Keuylian with his financial issues. (*Id.*) The Government subsequently dismissed

the 2009 Information without prejudice in November 2012. (2009 Case, Dkt. No. 68.) The present Indictment was filed five months later. (*See* Indictment.)

## III. ANALYSIS

■ Rule 7 of the Federal Rules of Criminal Procedure provides that an "indictment ... must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). An indictment satisfies Rule 7 if it "provides 'the substantial safeguards' to criminal defendants that indictments are designed to guarantee." *United States v. Cecil,* 608 F.2d 1294, 1296 (9th Cir.1979) (per curiam) (quoting *Russell v. United States,* 369 U.S. 749, 763, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)). Accordingly, an indictment must allege sufficient facts to (1) enable the defendant to prepare a defense, (2) ensure that the defendant is prosecuted on the basis of facts presented to the grand jury, (3) enable the defendant to plead jeopardy against a later prosecution, and (4) inform the court of the facts alleged so that it can determine the sufficiency of the charge. *Id.* (citing *Russell,* 369 U.S. at 763, 768 n. 15, 82 S.Ct. 1038); *see also United States v. King,* 587 F.2d 956, 963 (9th Cir.1978) ("The failure of an indictment to detail each element of the charged offense generally constitutes a fatal defect."). An indictment that fails to set forth a sufficient factual basis for the charges must be dismissed; a bill of particulars cannot save it. *See United States v. ORS, Inc.,* 997 F.2d 628, 631 n. 5 (9th Cir.1993); *Cecil,* 608 F.2d at 1296 ("If a bill of particulars were allowed to save an insufficient indictment, the role of the grand jury as intervenor would be circumvented.").

■ The Indictment here fails to sufficiently allege an offense under the wire fraud statute. Wire fraud consists of using the wires in "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343. But aside from the Indictment's conclusory allegation that Mr. Keuylian "executed a scheme to defraud ... by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts," (Indictment ¶ 3), the Indictment fails to describe any act of deception committed by Mr. Keuylian. It alleges no misrepresentation, no false pretense, no false promise, and no concealment. At most, the Indictment alleges that Mr. Keuylian "began selling cars without notifying VCI or paying VCI for the cars," (*id.*), but that allegation simply shows a willful breach of contract. Without some affirmative act of deception, a failure to perform one's contractual duties does not amount to fraud. *See United States v. Kreimer,* 609 F.2d 126, 128 (5th Cir.1980) ("[T]he [mail fraud] statute does not reject all business practices that do not fulfill expectations, nor does it taint every breach of business contract. Its condemnation of a 'scheme or artifice to defraud' implicates only plans calculated to deceive.").[1]

The Tenth Circuit's decision in *United States v. Curtis,* 506 F.2d 985, 989 (10th Cir.1974), is instructive. *See Cecil,* 608 F.2d at 1297 (citing *Curtis* with approval); *United States v. Buckley,* 689 F.2d 893, 897 (9th Cir.1982) (citing *Cecil* and *Curtis* in support of the proposition that "[i]ndictments alleging a scheme to defraud must provide sufficient facts to fulfill the pur-

---

1. Because mail fraud and wire fraud are both defined as "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," 18 U.S.C. §§ 1341, 1343, case law addressing the mail fraud statute is generally applicable to the wire fraud statute, and vice versa. *See United States v. Manarite,* 44 F.3d 1407, 1411 n. 5 (9th Cir.1995).

poses of àn indictment"). In *Curtis*, the defendant had established a "Computer Matching Institute," which promised to match people looking for dates or marriages using a computerized method. 506 F.2d at 986–87. The indictment alleged that the operation was in reality a sham. *Id.* Reviewing the defendant's mail fraud conviction on appeal, the court found that the indictment "plead[ed] little more than the statutory language without any fair indication of the nature or character of the scheme or artifice relied upon, or the false pretenses, misrepresentations or promises forming a part of it." *Id.* at 992. Indeed, the accusations were so vague that "the grand jury may have had a concept of the scheme essentially different from that relied upon by the government before the trial jury." *Id.* at 989. The court thus required dismissal of the indictment. *Id.* at 992; *accord United States v. Nance*, 533 F.2d 699 (D.C.Cir.1976) (requiring dismissal of indictment that alleged "false pretenses" but failed to allege what the false pretenses were).

Here, the Indictment suffers from the same defect as the indictment in *Curtis.* As in *Curtis*, the Indictment here simply tracks the statutory language without any fair indication of the scheme to defraud, or the false pretenses, misrepresentations, or promises forming a part of it. *Cf. United States v. Cuevas*, 285 Fed.Appx. 469, 470 (9th Cir.2008) ("Because the indictment on th[e] charge [of making a false statement to a federal officer] completely fails to identify what the alleged false statement was, it failed to apprise [defendant] sufficiently of that which she must be prepared to meet at trial."). Accordingly, the wire fraud charges against Mr. Keuylian must be dismissed.

The Indictment must also be dismissed because it fails to allege that VCI was ever deceived. *See United States v. Lew*, 875 F.2d 219 (9th Cir.1989) (reversing mail fraud conviction because victims who lost money were not deceived in any way); *see also id.* at 221 ("[T]he intent must be to obtain money or property from ... *one who is deceived* ...." (emphasis added)); *McNally v. United States*, 483 U.S. 350, 358, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) ("[T]he words 'to defraud' ... 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'" (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 68 L.Ed. 968 (1924))). The Indictment alleges that VCI was not notified that the cars were sold and, therefore, was "defraud[ed] ... of money it was owed." (Indictment ¶ 3.) But simply alleging that VCI was not notified does not show that VCI was deceived, nor does the Indictment allege any other facts suggesting that VCI was deceived.[2]

The Indictment does not allege, for example, that Mr. Keuylian led VCI to believe that cars remained unsold after they had in fact been sold. By contrast, the 2009 Information went markedly further, alleging that Mr. Keuylian "deceived VCI into believing that certain cars ... were still unsold, when in truth ... these cars had been sold." (2009 Information ¶ 3; *see also id.* ¶ 5.) The Court need not speculate why this language was removed, nor whether the Indictment would be sufficient if the language had been retained. But without some allegation that VCI was deceived or tricked into being deprived of the $12.6 million it was owed, the present Indictment fails to allege an essential ele-

---

**2.** Indeed, the Indictment suggests that VCI was aware that some of the 54 cars had been sold because it alleges that VCI wired $122,660 to Mr. Keuylian's account "to pur-

chase a 2006 Bentley Continental as a trade-in for a Lamborghini purchased by L.G." (Indictment ¶ 6.)

ment of wire fraud. The Indictment must therefore be dismissed for this reason as well.[3]

## IV. CONCLUSION

Although the Indictment tracks the language of the wire fraud statute, it does not allege any act of deception by Mr. Keuylian, nor does it allege that VCI was deceived. For both of these reasons, the Indictment fails to state an offense under the wire fraud statute. Mr. Keuylian's motion to dismiss the Indictment is therefore GRANTED.

---

**3.** Mr. Keuylian also argues that the Indictment fails to state an offense because it fails to allege that he "obtained" money or property by means of the alleged scheme. (*See* Dkt. No. 20 ["Reply"] at 2–3.) But a fraudulent scheme need not be intended to *obtain* another's money or property; it may instead be intended to *deprive* another of money or property legally due. *See Pasquantino v. United States,* 544 U.S. 349, 356, 125 S.Ct. 1766, 161 L.Ed.2d 619 (2005) (holding that defendants' attempt to "deprive Canada of money legally due" constituted a scheme to defraud); *see also United States v. Ali,* 620 F.3d 1062, 1067, 1070 (9th Cir.2010).