**Filed 10/16/96**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

   Plaintiff - Appellee,

    v.

MICHAEL ALAN COMBS and VIOLA
HATCH

   Defendants - Appellants.

Nos. 95-6408 & 95-6411

W.D. Oklahoma

(D.C. No. CR-95-37-C)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **GODBOLD**,[**] and **MURPHY**, Circuit Judges.

---

Michael Combs and Viola Hatch appeal their convictions and sentences for

unlawfully converting funds belonging to an Indian tribal organization in violation of 18

U.S.C. § 1163. Mr. Combs was convicted of receiving double payments for travel and

improper conference fees. Ms. Hatch was convicted of receiving double travel payments

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable John C. Godbold, Senior Circuit Judge, United States Court of
Appeals for the Eleventh Circuit, sitting by designation.

and improper travel expenses for meetings that she did not attend. They both argue on appeal that because they never had lawful possession of the funds in question, the evidence was insufficient to support their convictions. Mr. Combs also alleges that (1) the district court committed several prejudicial errors, resulting in a denial of due process and a fair trial; and (2) the district court erroneously enhanced his sentence by two offense levels pursuant to USSG §3B1.3 for abusing a position of trust. Ms. Hatch additionally alleges that (1) the evidence generally was insufficient to support her conviction; (2) the district court erroneously admitted documentary evidence which prejudiced her; and (3) the district court improperly enhanced her sentence by attributing financial losses to her that were unsupported by evidence and increasing her offense level for abusing a position of trust.

Mr. Combs' appeal was assigned number 95-6408 and Ms. Hatch was assigned number 95-6411. We companioned the appeals for purposes of disposition. Because we find the evidence insufficient to support the convictions for conversion, we reverse.


## I.    Background

The Cheyenne-Arapaho Tribes of Oklahoma ("Tribes") is a combination of two native American tribes that function together as an Indian tribal organization. The Tribes' constitution mandates a governing business committee and several tribal officers, including treasurer and business manager. Viola Hatch served the Tribes as treasurer in

1988 and 1989.  Although she was not officially treasurer in 1990 and 1991, the Tribes continued to use her signature as treasurer on its checks during that time.  The tribal constitution provides that the treasurer is the custodian of all tribal monies and that any transactions on tribal accounts must be signed by the treasurer and one other officer or member of the business committee.  Michael Combs worked as business manager for the Tribes from April 1989 to December 1990.  The business manager's precise duties were the subject of some dispute at trial, however, it is undisputed that the business manager shared responsibility for authorizing travel and travel-related payments for persons on tribal business.

To govern travel policy and procedures, the Tribes have used the General Services Administration's Federal Travel Regulations ("travel regulations")[1] since 1986.  The Tribes have also used a Manual of Personnel Policies ("manual") since 1989, which allows reimbursement for employees' travel expenses and other reasonable expenses in accordance with the travel regulations.  During the period covered by the indictment, March 1990 through September 1991, the Tribes' formal policy required people traveling on tribal business to satisfy several requirements before they could receive tribal funds.  Prior to any travel, a program director and the business manager (defendant Combs) were required to approve the trip.  If an employee traveled out of state, the full business committee also had to authorize the travel by resolution.

---

[1] See 41 C.F.R. Part 301 (1995).

Once travel was authorized, employees and business committee members were required to submit a check request form in order to receive tribal funds for their travel expenses. The check request form required the authorizing signatures of the business manager and the comptroller. Attached to the check request form, employees also had to submit a travel authorization form, which stated the location, time and reason for the travel. The travel authorization form required the signatures of the business committee chairman and the business manager (defendant Combs). Once approved, the travel checks were issued by the finance department, and bore the signatures of the chairman and the treasurer (defendant Hatch).

Audits by the Office of Inspector General and an independent firm revealed irregularities in the Tribes' application of the travel regulations. In practice, the administrative assistant to the business manager and the executive secretary to the business committee completed most travel expense documents at the request of the person traveling. They had no training in how to apply the travel regulations and did not possess a copy of the full regulations, so errors often occurred. For example, the travel regulations mandated different per diem rates depending on the duration of travel. Contrary to the regulations, the Tribes' practice was to use the maximum per diem rate for all travel and to give a full four quarters of per diem for each day regardless of when the travel actually began and ended. More important, while the appropriate officials regularly approved travel authorization and check request forms, the Tribes processed hundreds of

-4-

travel forms for many employees with no internal system to cross reference the expense requests. This lack of procedural safeguards made it possible for employees to receive more than one travel advance or reimbursement for travel on the same day.

Following the audits that revealed the travel problems, several tribal leaders were investigated. In 1995, Combs, Hatch and two others were charged in a thirty-two count indictment, alleging numerous acts of embezzlement, conversion and conspiracy to embezzle and convert tribal funds. Pursuant to Fed. R. Crim. P. 29, the district court granted Mr. Combs' motion for acquittal on the conspiracy count, one of the conversion counts, and all embezzlement charges. However, the district court denied Mr. Combs' motion for acquittal on the remaining five conversion counts, and the jury convicted. The district court also granted Ms. Hatch's motion for acquittal on the conspiracy count, the embezzlement charges, and one of the conversion counts, but the court denied her motion for acquittal on the remaining six conversion counts. The jury acquitted Ms. Hatch on two counts and convicted her on four counts of conversion.

## II. Discussion

The statute under which Mr. Combs and Ms. Hatch were charged, 18 U.S.C. § 1163, provides as follows:

> Whoever embezzles, steals, knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, goods, assets, or other property belonging to any Indian tribal organization or intrusted to the custody or care of any

officer, employee, or agent of an Indian tribal organization; or
Whoever, knowing any such moneys, funds, credits, goods, assets, or other
property to have been so embezzled, stolen, converted, misapplied or
permitted to be misapplied, receives, conceals, or retains the same with
intent to convert it to his use or the use of another--

Shall be fined under this title, or imprisoned not more than five
years, or both; but if the value of such property does not exceed the sum of
$100, he shall be fined under this title, or imprisoned not more than one
year, or both.

The government chose not to charge Mr. Combs or Ms. Hatch in the alternative

under this statute, alleging embezzlement, stealing, conversion, and willful

misapplication.  See, e.g., United States v. Holmes, 611 F.2d 329, 331 (10th Cir. 1979);

see also United States v. Palmer, 766 F.2d 1441, 1443 (10th Cir. 1985) (willful

misapplication of tribal funds).  Rather, the government limited its charges to

embezzlement or conversion.  The embezzlement charges were subsequently dismissed,

leaving conversion as the sole charged offense, upon which the jury returned its guilty

verdicts.

Our definition of conversion under 18 U.S.C. § 641 applies equally to § 1163, as

well as the distinction between conversion and stealing:

The distinction between stealing and conversion turns on how possession is
obtained.  One who gains possession of property by wrongfully taking it
from another steals.  One who comes into possession of property by lawful
means, but afterwards wrongfully exercises dominion over that property
against the rights of the true owner, commits conversion.

-6-

United States v. Hill, 835 F.2d 759, 764 (10th Cir. 1987) (citations omitted). The prior lawful possession requirement of a conversion presents a significant problem for the government in these cases.

*A. United States v. Combs: No. 95-6408*

Counts 12 and 13 allege that after receiving travel expense advances on March 22, 1990, for anticipated travel to Oklahoma City on March 27 and 30, Mr. Combs subsequently made further claims for and received duplicate travel expenses for trips on those dates. Specifically, the government charges that Mr. Combs double billed $107.55 for travel on March 27, 1990, and $151.96 for travel on March 30, 1990. Count 15 alleges that Mr. Combs submitted an improper request for and received $436.26 for expenses incurred in connection with a convention in Las Vegas which had been canceled. Mr. Combs had previously received a travel advance of $1,605.55 for that trip. As charged by the government, then, these duplicate expense payments were improper from the outset.

Counts 14 and 17, alleging excessive claims for conference registration fees, present a slightly different version of the same problem. Count 14 alleges in essence that on April 26, 1990, Mr. Combs requested and received an advance of $325.00 to pay the registration fee for a conference in Las Vegas, knowing that the registration fee was only $50.00. Count 17 alleges, in essence, that on October 31, 1990, Mr. Combs requested and

received an advance of $375.00 to pay the registration fee for a November conference in Las Vegas, knowing that the registration fee was, at most, $275.00. Similarly, then, these requests and payments were also improper from the outset.

The government does not dispute this point. Rather, it seeks to establish prior lawful possession through Mr. Combs' general dominion over tribal funds. It argues that Mr. Combs "exercised a great deal of discretion and control over tribal moneys in the disbursement process. By virtue of these duties, he was also in lawful possession of the funds ultimately converted." Consol. Br. of Plaintiff-Appellee at 20. This position is similar to the theory advanced by the government to support its charge of embezzlement against Mr. Combs as to these same payments, a charge dismissed by the district court essentially because of the same problem which we see in the conversion charge. The following colloquy between government counsel and the court makes the point:

Mr. Lillard:   I believe that our theory is that the travel claims were false.

The Court:   When they were made?

Mr. Lillard:   Yes.

The Court:   Then explain to me how that's embezzlement.

Mr. Lillard:   Well, the money was in their rightful possession, as I explained in the response, by virtue of the positions within the tribe.

The Court:   Well, if it was a false claim when made, then it was never lawfully in their possession.

Mr. Lillard:   No, by virtue of their position in their office, within the tribe. They all had responsibilities, fiduciary responsibilities within the tribe with regard to the budget and the tribal monies.

R. Vol. VIII at 869.

In support of its argument, the government points to the fact that Mr. Combs, as business manager, kept books, and approved check requests and travel authorization forms--including some of the requests and forms in question here.  The government notes that those forms are necessary in the disbursement process, and funds could not be paid without them.  Consol. Br. of Plaintiff-Appellee at 20.

While we agree that Mr. Combs played a significant role in the process of disbursing tribal funds for travel expenses, we disagree that his authority was sufficient to amount to "possession" of these funds.  No tribal monies could be disbursed without the participation and authorization of at least three individuals other than Mr. Combs:  the comptroller, who had to sign each check request form, the business committee chairman, who had to sign each travel authorization form and check, and the treasurer, who had to sign each check.  Clearly, Mr. Combs could not extract money from the tribal treasury on his own authority, or divert it to himself because of his position.  However lax the claim and payment process was--and there was considerable evidence of laxity--the government produced virtually no evidence to show that Mr. Combs, acting on his own, had dominion over tribal money.

Like Mr. Combs' case, the prior lawful possession requirement of conversion presents a significant obstacle to the government's case against Ms. Hatch. Counts 19 and 22, like the double-expense charges against Mr. Combs, allege that Ms. Hatch received double payments for travel on the same day. Specifically, count 19 charges that she received an advance for travel to Tulsa, Oklahoma, for a seminar held August 7 through 11, 1990. On August 14, she then received $164.20 for an Environmental Protection Agency meeting also held on August 7 in Guymon, Oklahoma. Similarly, count 22 charges that she requested and received an $800 travel advance for a seminar in Albuquerque, New Mexico, from April 15 through April 19, 1991, and then requested and received $52.56 for travel to a Riverside Indian School Board meeting in Andarko, Oklahoma, also on April 15. The government alleges that these double travel claims were fraudulent at the time Ms. Hatch requested them.

A similar problem with prior lawful possession arises in counts 18 and 24, which both allege that Ms. Hatch requested and received travel advances for meetings of the Riverside Indian School Board that she never attended. Specifically, count 18 charges that on July 30, 1990, she received $171.40 for a school board meeting held on August 14, 1990, which she did not attend. Count 24 charges that on September 17, 1991, she received $72.00 for an October 1 school board meeting which she also failed to attend. As charged by the government, these false travel claims were also improper when she

requested them, that is, Ms. Hatch requested the advances knowing them to be improper from the outset.

As with Mr. Combs, the government does not dispute this point with regard to Ms. Hatch. The government attempts to establish Ms. Hatch's prior lawful possession based on her position as treasurer in the tribe.[2] As with Mr. Combs, the government alleges Ms. Hatch's duties as treasurer "reflected her supervision and control of tribal funds [sic] supports the conclusion that she was in lawful possession of the tribal funds ultimately converted." Consol. Br. of Plaintiff-Appellee at 20. To support this argument, the government cites Ms. Hatch's role as custodian of tribal monies, her duty to conserve and disburse tribal funds, and her role in financial decisions of the business committee. Moreover, the government points out that she was an authorized signatory on the Tribes' checking account, that the constitution required the treasurer's signature on all tribal checks, and that her signature appeared on almost every tribal check introduced at trial. The government then argues that, like the owner of any joint checking account, Ms. Hatch "was an owner and in lawful possession of the tribes' bank account." Id. at 19.

While we agree that Ms. Hatch had significant responsibility for the Tribes' accounts and that her signature was required in order to disburse tribal funds, we cannot

_____

[2]There was considerable dispute at trial and in the briefs concerning whether Ms. Hatch was the treasurer during the period of the indictment. However, viewing the evidence in the light most favorable to the government, because Ms. Hatch's signature as treasurer was on nearly all of the checks presented at trial, the jury could have reasonably concluded that she was treasurer or acting treasurer.

agree that her authority was sufficient to put her in lawful possession of the Tribes' funds, including "ownership" of the Tribes' bank account as the government alleges. Like Mr. Combs, Ms. Hatch could not disburse tribal funds for travel without the participation of three other tribal officers: the comptroller, the business committee chairman, and the business manager. The government makes no allegation that Ms. Hatch in fact bypassed the Tribes' process for disbursement of funds, or that she failed to complete the appropriate forms with proper signatures prior to receiving travel expense money.

These facts distinguish both cases from United States v. Campbell, 52 F.3d 521 (5th Cir. 1995), relied upon by the government. In Campbell, the defendant, was convicted of embezzling funds from various customer accounts at a bank. She personally had authorized access to customer accounts and bank funds, and did not need the services of another teller or bank official in order to process the documents required to convert funds. Id. at 523. Here, at most, Mr. Combs and Ms. Hatch exercised influence, but not control. Other arguments and authorities advanced by the government are similarly distinguishable.

Applying the appropriate standard of review (which is not in dispute here), see, e.g., United States v. Urena, 27 F.3d 1487, 1489 (10th Cir.), cert. denied, 115 S. Ct. 455 (1994); see also United States v. Spring, 80 F.3d 1450, 1459 (10th Cir. 1996) (quoting United States v. Jones, 44 F.3d 860, 864 (10th Cir. 1995)), we conclude that the evidence was not sufficient to support Mr. Combs' or Ms. Hatch's conviction for converting tribal

funds.  Because of this conclusion, it is unnecessary for us to reach the other issues raised

by Mr. Combs and Ms. Hatch in their appeals.

For the reasons stated above, we REVERSE the convictions and VACATE the

sentences in these cases.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge