**UNITED STATES of America, Appellee,**

v.

**Thomas PALMER, Defendant-Appellant.**

**Nos. 84–1609, 84–1615 and 84–1999.**

United States Court of Appeals,
Tenth Circuit.

July 9, 1985.

Rehearing Denied Sept. 17, 1985.

Warren Gotcher, of Gotcher, Brown and Bland, McAlister, Okl., and F. Browning Pipestem, G. William Rice, of Pipestem & Rice, Norman, Okl., submitted briefs for defendant-appellant.

Maria A. Iizuka, Atty., Dept. of Justice, Washington, D.C. (F. Henry Habicht, II, Asst. Atty. Gen., Martin W. Matzen, Atty., Dept. of Justice, Washington, D.C., Gary L. Richardson, U.S. Atty., Robert M. Klosiewicz, Asst. U.S. Atty., Muskogee, Okl., on the brief), for appellee.

Before BARRETT, MOORE and TIMBERS *, Circuit Judges.

* Of the Second Circuit, sitting by designation

TIMBERS, Circuit Judge.

The chief question presented by these consolidated appeals, in our view, is whether the district court had subject matter jurisdiction, pursuant to 18 U.S.C. § 1163 (1982), to indict and try the Chief of the Seminole Nation Indian Tribe for misapplication of funds of that Nation, or whether the Seminole Nation had exclusive jurisdiction to do so. We hold that the district court had subject matter jurisdiction. Other subordinate questions are presented.

Thomas Palmer appeals from (1) a judgment of conviction entered April 11, 1984; (2) an amended judgment of conviction entered April 17, 1984; and (3) an order entered June 28, 1984 denying appellant's motion for a new trial based on newly discovered evidence. The three appeals have been consolidated.

Appellant was convicted after a jury trial in the Eastern District of Oklahoma, Frank H. Seay, *District Judge*, on three of the four counts set forth in the indictment charging willful misapplication of funds of the Seminole Nation Indian Tribe in violation of 18 U.S.C. § 1163 (1982). Appellant initially was sentenced to three concurrent terms of two and a half years imprisonment and was ordered to make restitution in the amount of $14,123.98. Appellant's sentence subsequently was amended to two concurrent terms of two and a half years imprisonment; a one year term of probation to commence at the conclusion of his imprisonment; and, as a special condition of probation, he was ordered to make restitution in the reduced amount of $8,923.98. Appellant has been free on his own recognizance pending the outcome of this appeal.

On appeal, appellant claims as error that the district court lacked subject matter jurisdiction, that the charges in the indictment were impermissibly vague, and that the district court erred in its rulings on several of appellant's motions, including his motion for a new trial. For the reasons stated below, we hold that none of these claims of error has merit. We affirm the amended judgment and the order denying appellant's motion for a new trial.

## I.

We shall summarize only those facts believed necessary to an understanding of our rulings on the legal issues raised on this appeal.

Appellant was elected in 1973 to a four year term as Assistant Chief of the Seminole Nation. He was reelected in 1977. He became Chief two and a half years later upon the resignation of the Chief then in office. During the period from October 1980 to September 1981, appellant authorized and co-signed, along with his sister who was treasurer of the tribe, a number of checks made payable to himself or to Charles Patton, the tribe's accountant.

Patton, who already was receiving a salary, was paid an additional $200 a day for the period from August 10 through September 4, 1981—ostensibly pursuant to a "consulting" contract, although no written contract ever was produced. Patton also was paid an additional fee in the same amount for the overlapping period from August 9 through August 14, 1981. He thus received a total of $5,200 in "consulting" fees during the two month period.

Appellant also diverted tribal funds to his own benefit. For example, he signed a check made payable to himself in the amount of $5,400.28 for 760 hours of annual leave. He had accumulated, however, only 97 hours of such leave. Appellant also claimed and received $1,676 for auto travel between October 1980 and July 1981 without presenting any documentation in support of the funds claimed and paid. Evidence of other similar defalcations was presented to the jury.

With this evidence in mind, we turn to a discussion of the legal issues raised on appeal.

## II.

Appellant argues that the district court lacked subject matter jurisdiction over the crimes for which appellant was indicted, tried and convicted. His argument relies on what he terms "the historically unique

treatment" which the Seminole Nation, as one of the so-called "Five Civilized Tribes" of Oklahoma, has received from Congress. As an example of this treatment, appellant points to the Treaty of August 7, 1856, 11 Stat. 699, in which the Seminoles were granted "the unrestricted right of self-government". *Id.* Appellant asserts that Congress intended to exclude members of the Seminole Nation from the reach of 18 U.S.C. § 1163 and that only the Seminole Nation has jurisdiction over the crimes for which he has been convicted. We disagree.

Section 1163 in relevant part provides:

"Whoever embezzles, steals, knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, goods, assets, or other property belonging to any Indian tribal organization or intrusted to the custody or care of any officer, employee, or agent of an Indian tribal organization" [is subject to a maximum term of five years imprisonment and a $5,000 fine.]

This statutory provision was enacted to protect tribes and tribal organizations "from the actions of dishonest or corrupt tribal officials." S. Rep. No. 2723, 84th Cong., 2d Sess., *reprinted in* 1956 U.S. Code Cong. & Ad.News 3841, 3841. It was enacted in response to what Congress perceived to be inadequate tribal codes and instances in which tribal members were reluctant to prosecute their officials. *Id.* at 3842.

■ That § 1163 was meant to apply to the Seminole Nation as well as to other tribes is clear. The section defines the term "Indian tribal organization" as *"any* tribe, band, or community of Indians which is subject to the laws of the United States relating to Indian affairs or any corporation, association, or group which is organized under any of such laws." 18 U.S.C. § 1163 (emphasis added). The legislative history of the statute, moreover, demonstrates that Congress intended it to apply to members of all tribes, including the "195 tribes, bands, or identifiable groups" organized under the Indian Reorganization Act of 1934, 25 U.S.C. § 461 et seq. (1982); the "77 tribes, bands, or identifiable groups which elected not to come under the Indian Reorganization Act"; *and* "other Indian groups ... organized under special laws pertaining to Oklahoma and Alaska." 1956 U.S.Code Cong. & Ad.News, *supra,* at 3842. Absent an express or implied limitation by Congress on the applicability of criminal statutes to certain tribes, federal criminal statutes are applicable uniformly to all tribes within the jurisdiction of Congress. *United States v. Blue,* 722 F.2d 383, 386 (8th Cir.1983); *United States v. McGrady,* 508 F.2d 13, 15–16 (8th Cir.1974), *cert. denied,* 420 U.S. 979 (1975); *Walks on Top v. United States,* 372 F.2d 422, 425 (9th Cir.), *cert. denied,* 389 U.S. 879 (1967). This is especially true where, as here, the criminal statute in question was intended by Congress to address corruption in tribal government and operates as a "specific Congressional limitation", *Arizona ex rel. Merrill v. Turtle,* 413 F.2d 683, 684 (9th Cir.1969), *cert. denied,* 396 U.S. 1003 (1970), on the exercise of jurisdiction over tribal matters.

■ We hold that the district court had subject matter jurisdiction pursuant to 18 U.S.C. § 1163 (1982) to indict and try appellant for the crimes of which he has been convicted.

We turn now to appellant's other claims of error, which require only brief discussion.

### III.

■ Appellant argues that the district court erred in denying his motion to dismiss the indictment and his motion for a bill of particulars. He asserts that the charges set forth in the indictment are so vague as to deny him due process. Specifically, he claims that the words "did willfully and knowingly misapply" fail to show "that defendant had any intent to commit any wrongdoing or how the application of these funds was made and that the actual application of these funds was improper."

Appellant relies primarily on *United States v. Britton*, 107 U.S. 655 (1883), in which the Supreme Court held that the words "wilfully misapplied" failed to "fully and clearly set forth every element of the offence charged." *Id.* at 669. *Britton*, however, is inapplicable to the case at bar.

First, the indictment ruled upon by the Court in *Britton*, unlike the indictment in the instant case, failed to charge that the funds were misapplied to the benefit of the defendant or some other person. *Id.* at 667, 669; *see also United States v. Quinn*, 365 F.2d 256, 262 (7th Cir.1966). The indictment in the instant case specified the amounts alleged to have been misapplied, the dates on which the misapplications were alleged to have occurred, and the persons for whose benefit the misapplications allegedly were made.

Second, the Court in *Britton* further was persuaded in its holding by the fact that "[t]he words 'wilfully misapplied' are, so far as we know, new in statutes creating offences, and they are not used in describing any offence at common law. They have no settled technical meaning like the word 'embezzle' as used in the statutes...." *Id.* at 669. During the period of more than a century since *Britton* was decided, the words "wilfully misapplied" have developed a commonly understood meaning. *United States v. Archambault*, 441 F.2d 281, 283 (10th Cir.1971).

Since the offenses were set forth in the language of the statute, stated facts sufficient to prepare a defense and avoid prejudicial surprise at trial, and stated facts sufficient to avoid the risk of double jeopardy, we hold that the denial of appellant's motions to dismiss the indictment and for a bill of particulars was not error. *United States v. Barbieri*, 614 F.2d 715, 719 (10th Cir.1980); *Archambault, supra*, 441 F.2d at 282.

## IV.

Appellant also appeals from the denial of his motion for a new trial based on the discovery after trial of what he terms "new evidence".

■ His motion was filed on June 7, 1984, six weeks after his notice of appeal was filed. Although the Fifth Circuit has held that the district courts lack jurisdiction under Fed.R.Crim.P. 33 to entertain such motions after a notice of appeal has been filed, *United States v. Johnson*, 487 F.2d 1318, 1321 (5th Cir.), *cert. denied*, 419 U.S. 825 (1974), we agree with the other courts of appeals that have decided the issue. *E.g., Virgin Islands v. Josiah*, 641 F.2d 1103, 1105 (3d Cir.1981); *United States v. Hays*, 454 F.2d 274, 275 (9th Cir. 1972); *United States v. Ellison*, 557 F.2d 128, 132 (7th Cir.), *cert. denied*, 434 U.S. 965 (1977). We hold that Rule 33 only deprives the district court of jurisdiction to *grant* a motion for a new trial during the pendency of an appeal and that the district court is empowered, during the pendency of an appeal, either to deny the motion or to certify to the court of appeals that it would grant the motion on remand. *United States v. Siviglia*, 686 F.2d 832, 835 (10th Cir.1981) (dicta), *aff'd on rehearing en banc*, 686 F.2d 836 (10th Cir.1982) (per curiam), *cert. denied*, 461 U.S. 918 (1983).

■ We hold that denial of the motion for a new trial in the instant case was not error.

The first item of "new evidence" offered in support of appellant's motion was an accounting document, accompanied by affidavits of a former employee of the Seminole Nation and of Charles Patton's wife. The document is a copy of a page of ledger entries that show payments to Patton in various amounts. Appellant argues that the document would have proved the existence of a "consulting contract". The employee's affidavit states that she had not recalled the existence of the document until it was shown to her by appellant's attorney after the close of the trial. The affidavit of Patton's wife states that she discovered the document in her home on March 26, 1984— five days after her husband was indicted on related charges. The second item of "new evidence" was an affidavit of an employee

# 1446

of the Bureau of Indian Affairs that sets forth definitions of "indirect costs" and "allowable costs" as used by government auditors.

We agree with the district court that appellant has failed to sustain his burden of proving (1) that the failure to learn of this evidence at the time of trial was not due to his lack of diligence; (2) that the evidence is not merely cumulative or impeaching; and (3) that the evidence is of such a nature that it would probably produce an acquittal in the event of a retrial. *United States v. Plum*, 558 F.2d 568, 576 (10th Cir.1977). Appellant had access to the affiants before trial. Upon the exercise of due diligence, he could have obtained the evidence in question. Moreover, the evidence in all likelihood would not have produced an acquittal upon a retrial because Patton was not entitled to the consulting fees he received, whether or not a "contract" existed.

## V.

Finally, we have reviewed appellant's other claims of error and hold that they are without merit. First, the admission of tribal documents, including cancelled checks showing the payments in question, was proper under Fed.R.Evid. 803(6), even though the treasurer of the tribe, who authenticated the documents, was not present when the records were prepared. *United States v. Pfeiffer*, 539 F.2d 668, 671 (8th Cir.1976). Second, the district court's partial denial of a late discovery motion was not an abuse of discretion. *United States v. Bailey*, 550 F.2d 1099, 1100 (8th Cir.1977) (per curiam); *United States v. Liebert*, 519 F.2d 542, 546–47 (3d Cir.), *cert. denied*, 423 U.S. 985 (1975).

## VI.

Appellant was convicted after a fair trial of serious crimes committed nearly four years ago. We carefully have reviewed all of his claims of error and conclude that none has merit. We affirm the amended judgment and the order of the district court. The mandate shall issue forthwith.

Affirmed.