# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-3733

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Minnesota. |
| | * | |
| Jon Jay Stone, Jr., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 11, 1997

Filed: May 2, 1997

_____

Before WOLLMAN and BEAM, Circuit Judges, and LAUGHREY,[1] District
     Judge.

_____

WOLLMAN, Circuit Judge.

     John Jay Stone, Jr. appeals his conviction for violating the Airborne
Hunting Act, 16 U.S.C. § 742j-1.  We affirm.

**I.**

     On May 11, 1995, Charles Swartz, an enforcement supervisor for the
Minnesota Department of Natural Resources, witnessed a small airplane
flying at a low altitude over the White Earth Indian

_____

[1]The HONORABLE NANETTE K. LAUGHREY, United States District
Judge for the Western District of Missouri, sitting by designation.

Reservation. The plane appeared to be attempting to steer a moose in a certain direction. When Schwartz stopped and exited his vehicle to photograph the plane, he heard a gunshot. Schwartz then drove in the direction of the gunshot and found three Native Americans holding rifles. Schwartz learned that the three were hunting a moose.

Subsequent investigation revealed that Enrique Vasquez had been hired by Roger Oberg, acting on behalf of the White Earth Tribal Council of the White Earth Reservation, to pilot the flight. Stone, an enrolled member of the White Earth Band of Chippewa Indians, accompanied Vasquez on the flight. Stone testified that he radioed from the plane and informed the hunters on the ground of the location of the moose. Stone stated that during that flight they chased a moose towards the hunters on the ground and that he witnessed the hunters shoot and kill the moose. Stone admitted that he knew the activities were illegal.

Stone, Oberg, and Vasquez were indicted for violating the Airborne Hunting Act. Stone moved to dismiss the indictment, contending that the district court lacked subject matter jurisdiction. The district court,[2] adopting the report and recommendation of the magistrate judge,[3] denied the motion. A jury convicted Stone, but acquitted Oberg and Vasquez. Stone appeals, contending that the district court lacked subject matter jurisdiction.

---

[2]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[3]The Honorable Franklin L. Noel, Chief United States Magistrate Judge for the District of Minnesota.

**II.**

Stone argues that 18 U.S.C. § 1162 (popularly known as Public Law 280) confers jurisdiction upon the state and not the federal courts.[4] Stone contends that the enactment of section 1162 was the result of Congress's desire "to be out of the business of prosecuting Indians within Indian Country and mandated that certain states assume that duty and offer their protection." Consequently, Stone argues, "the Federal Government abdicated its duty of protection" and gave "exclusive jurisdiction over 18 U.S.C. 1153, 1152 crimes" to Minnesota.

The first paragraph of 18 U.S.C. § 1152 extends to Indian country federal enclave jurisdiction over crimes in which the situs

---

[4]Section 1162 states in part:

(a) Each of the States or Territories listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:

. . . .

Minnesota. . . . . All Indian country within the State, except the Red Lake Reservation.

. . . .

(c) The Provisions of sections 1152 and 1153 of this chapter shall not be applicable within the areas of Indian country listed in subsection (a) of this section as areas over which the several States have exclusive jurisdiction.

-3-

of the offense is an element.[5]  See Stone v. United States, 506 F.2d 561, 563 (8th Cir. 1974).  Federal jurisdiction in Indian country is also granted by 18 U.S.C. § 1153, but only over certain enumerated offenses.[6] Stone is correct in his assertion that section 1162 transferred the federal jurisdiction provided in sections 1152 and 1153 to those states designated in section 1162.  See United States v. Burns, 529 F.2d 114, 117 n.2 (9th Cir. 1975) (section 1162 delegated jurisdiction over offenses committed in Indian country to the states, making sections 1152 and 1153 inapplicable); Native Village of Venetie I.R.A. Council v. Alaska, 944 F.2d 548, 555 n.8 (9th Cir. 1991) ("Broadly put, [section 1162]

─────────────────

[5]Section 1152 provides:

Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Colombia, shall extend to the Indian country.

This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who had been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

[6]Section 1153 provides in part:

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnaping, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

gave to certain enumerated states concurrent jurisdiction over criminal and civil matters involving Indians, where jurisdiction had previously vested only in federal and tribal courts.").

Stone's assertion that section 1162 gave the State of Minnesota exclusive jurisdiction in this case is mistaken, however, for violation of the Airborne Hunting Act is not one of the offenses enumerated in section 1153. Violation of the Airborne Hunting Act is likewise not within the purview of section 1152, as it is a crime of general applicability; that is, the situs of the offense is not an element of the crime. As such, it applies with equal force when committed by an Indian on the reservation. See Burns, 529 F.2d at 117 n.2 (section 1162 "does not eliminate federal jurisdiction over persons committing crimes in violations of the federal statutes of general applicability").

Stone also contends that the treaties between the Chippewa Indians and the United States vested the tribes with jurisdiction over hunting, fishing, and wild rice gathering and that therefore he cannot be federally prosecuted for hunting on the reservation. It is true that the Chippewa Indians reacquired hunting and fishing rights on the reservation through the Treaty of 1864, 13 Stat. 693, and the Treaty of 1867, 16 Stat. 719. See State v. Clark, 282 N.W.2d 902, 909 (Minn. 1979) (concluding that the Chippewa Indians reacquired aboriginal hunting and fishing rights through the Treaties of 1864 and 1867 and that the Chippewa Indians have "the right to hunt and fish free of state regulation on all reservation lands"); White Earth Band of Chippewa Indians v. Alexander, 518 F.Supp. 527, 534 (D.Minn. 1981) (citing Clark, 282 N.W.2d at 908).

As the Ninth Circuit pointed out, however, despite the fishing rights contained in a treaty, "Indians do *not* have any treaty

reserved right to exercise *exclusive* jurisdiction over such fishing matters."  United States v. Sohappy, 770 F.2d 816, 820 (9th Cir. 1985)(upholding federal jurisdiction over an Indian on the reservation under federal statute criminalizing transporting, selling, or acquiring fish).  "Indian sovereignty is 'necessarily limited' and must not conflict with the the [sic] overriding sovereignty of the United States."  Id. at 819.  Federal laws of general applicability "are applicable to the Indian unless there exists some treaty right which exempts the Indian from the operation of the particular statutes in question."  Burns, 529 F.2d at 117; Sohappy, 770 F.2d at 820 (quoting Burns, 529 F.2d at 117).  The Treaties of 1864 and 1867 contain no language which purports to immunize Stone from prosecution for violating laws of general applicability.  Moreover, as in Sohappy, federal jurisdiction under the Airborne Hunting Act is not "disruptive of tribal authority, for rather than overturning basic tribal regulations, it supports the tribal laws by authorizing federal penalties for violations," and its enforcement against an Indian on Indian land is proper.  Id. at 819-20.[7]

The judgment is affirmed.

---

[7]The White Earth Band's Conservation Code prohibits the taking and/or pursuit of game from a motor vehicle: "It is prohibited to take, attempt to take or pursue game animals, furbearers or waterfowl from a motor vehicle excepting that waterfowl may be taken from a motorized boat with the engine raised and shut off." C.C. 400.05, subd. 3.  Airplanes are included in the definition of "motor vehicle" under the Conservation Code:  "Motor Vehicle: Shall mean, but not be limited to, any car, truck, automobile, motorized boat, cycle, snowmobile, all-terrain vehicle, airplane or any other vehicle that is motorized."  C.C. 100.08, subd. 20.

A true copy.

Attest:

          CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.