UNITED STATES of America,
Plaintiff–Appellee,

v.

Curtis ANDERSON, Defendant–
Appellant.

No. 03–10516.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 2004.

Filed Dec. 14, 2004.

See also 2004 WL 2862153.

George C. Boisseau, Santa Rosa, CA, for
the defendant-appellant.

Haywood S. Gillam, Jr., Assistant Unit-
ed States Attorney, San Francisco, CA, for
the plaintiff-appellee.

Before CANBY, RYMER, and
HAWKINS, Circuit Judges.

RYMER, Circuit Judge:

This appeal by Curtis Anderson, a mem-
ber of the Robinson Rancheria Band of
Pomo Indians, turns on whether 18 U.S.C.
§ 1162 gives the State of California exclu-
sive jurisdiction over all crimes committed
in Indian country within its borders, there-
by depriving the district court of jurisdic-
tion in this case. Anderson was convicted
of theft, and conspiring to commit theft,
from an Indian tribal organization in viola-
tion of 18 U.S.C. §§ 371 and 1163. He
argues that the district court lacked sub-
ject matter jurisdiction by virtue of
§ 1162, and that § 1163 both offends the

Indian Commerce Clause and cannot be applied to Indians. We hold that § 1162 does not give the state exclusive jurisdiction precluding federal jurisdiction over offenses that arise under federal laws of general applicability such as §§ 371 and 1163. We also conclude that § 1163 applies to Indians, and that applying § 1163 to Indian lands does not exceed congressional power under the Commerce Clause. Accordingly, the district court had jurisdiction and we affirm.[1]

I

Anderson was the chairperson in 1997 and 1998 of the Robinson Rancheria Band of Pomo Indians (the Tribe), a federally recognized tribe whose reservation is located outside of Nice, California. He was one of six members of the Robinson Rancheria Citizen's Council (the Council), the Tribe's governing body that was responsible for overseeing its business affairs. One of the Tribe's primary business ventures was the Robinson Rancheria Bingo and Casino (the Casino), a federally regulated gambling establishment. The Casino is located on Robinson Rancheria.

Anderson's convictions arose out of a kickback scheme in which he participated with Stanley Malicay, the Tribe's Economic Development Advisor, and Ronald Peterson, who owned a gambling machine sales, leasing and repair company that serviced machines at the Casino. At a meeting with Anderson and Peterson, Malicay indicated that he and Anderson needed money and proposed that they arrange for Peterson to receive a $25,000 check from the Tribe for a fictitious consulting agree-ment with the understanding that Peterson would then give the money back to Anderson and Malicay. Peterson agreed, and the scheme was implemented.

Anderson was indicted for this scheme and others. He brought a pretrial motion to dismiss for lack of jurisdiction, which the district court denied. The court reasoned that § 1162 does not eliminate federal jurisdiction for general crimes that do not derive from federal enclave laws, and that §§ 1163 and 371 are not enclave laws but instead are laws of nationwide applicability; therefore, § 1162 does not confer exclusive criminal jurisdiction upon California. Following trial to a jury, Anderson was convicted on one count of conspiracy and one count of theft from an Indian tribal organization.[2] He was sentenced to a term of imprisonment of twelve months and one day.

Anderson has timely appealed.

II

Section 1162, often referred to as Public Law 280, is at the heart of Anderson's appeal. It provides:

(a) Each of the States or Territories listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect

---

1. We address the merits of Anderson's conspiracy and theft convictions, as well as his convictions for mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343 in a separate, unpublished disposition.

2. He was also found guilty of mail and wire fraud, but was acquitted on one count charging theft from an Indian tribal organization and of the conspiracy and substantive counts charging theft from a gaming establishment on Indian land.

within such Indian country as they have elsewhere within the State or Territory:

. . .

California . . . . . . . . . . All Indian country within the State

. . .

(c) The provisions of sections 1152 and 1153 of this chapter shall not be applicable within the areas of Indian country listed in subsection (a) of this section as areas over which the several States have exclusive jurisdiction.

Anderson argues that through § 1162(c) Congress manifested its intent to divest federal jurisdiction over § 1152 and § 1153 crimes[3] and to give California exclusive criminal jurisdiction over Indian lands within the state. We disagree.

■ Section 1162(a) on its face gives California jurisdiction in Indian country to the same extent it has jurisdiction over offenses committed within the state as a whole. Nothing in the text suggests that this jurisdiction is exclusive. *See, e.g., Na-*

*tive Village of Venetie I.R.A. Council v. Alaska,* 944 F.2d 548, 555 n. 8 (9th Cir. 1991) (indicating that § 1162 gave concurrent jurisdiction over criminal matters involving Indians to the enumerated states where jurisdiction had previously vested only in federal and tribal courts). Nor does subsection (c) have the effect of conferring exclusive jurisdiction on the state over *all* crimes committed in Indian country within the borders of the state. It simply removes federal jurisdiction over federal enclave laws in designated Indian country within the states listed in the statute, and over certain major crimes when committed by Indians or in Indian country within the state. In other words, California applies its own criminal laws to Indians in Indian country. *See United States v. Burns,* 529 F.2d 114, 117 & n. 2 (9th Cir.1975).

We have frequently said that federal criminal laws of nationwide applicability apply to Indians within Indian country just

---

3. 18 U.S.C. § 1152 codifies the Federal Enclave Act, and 18 U.S.C. § 1153, the Indian Major Crimes Act. The effect of the two Acts is to extend federal court jurisdiction over enclave laws to Indian country unless the offense is committed by an Indian against another Indian, or by an Indian in the Indian country, and is not a "major crime" identified in § 1153.

Section 1152 provides:
Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.
This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

Section 1153 provides:
(a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury (as defined in section 1365 of this title), an assault against an individual who has not attained the age of 16 years, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.
(b) Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

as they apply elsewhere. *See, e.g., United States v. Begay*, 42 F.3d 486, 499 (9th Cir.1994); *Burns*, 529 F.2d at 117; *United States v. Juvenile Male*, 118 F.3d 1344, 1350–51 (9th Cir.1997); *United States v. Gallaher*, 275 F.3d 784, 788–89 (9th Cir. 2001); *United States v. Smith*, 387 F.3d 826, 829 (9th Cir.2004). Laws of nationwide applicability are laws that "make actions criminal wherever committed." *Begay*, 42 F.3d at 498. Enclave laws, by contrast, are laws in which the situs of the offense is an element of the crime—places such as military bases, national parks, federal buildings, and the like. As we held in *Begay*, § 1152 does not apply to violations of laws of nationwide applicability, nor does § 1153 have any bearing on federal laws of nationwide applicability. *Id.* Consequently, § 1162(c) does not eliminate federal jurisdiction for general crimes even though §§ 1152 and 1153 are inapplicable to the areas of Indian country over which the listed states have jurisdiction.[4]

Anderson reads subsection (c) differently, contending that its last phrase specifies that state jurisdiction is intended to be exclusive. The phrase refers to the areas of Indian country in which §§ 1152 and 1153 are not applicable "as areas over which the several States have exclusive jurisdiction." It was added by amendment to the statute in 1970. To the extent the meaning of this phrase is ambiguous, the legislative history indicates that it was inserted "because subsection (c) refers to the 'Indian country listed in subsection (a)' and that list includes Indian country not under state jurisdiction as well as areas that

are . . . : Obviously sections 1152 and 1153 are meant to apply to the former category. . . . While the additional language is perhaps unnecessary, it was added for purposes of clarity." Letter from Senators Ted Stevens, Mike Gravel, and Sam J. Ervin, Jr. to Emanuel Celler, Chairman of the House Judiciary Committee, *reprinted in* 116 Cong. Rec. 37353, 37354 (1970). This is a reasonable construction that in no way means that states were given jurisdiction exclusive of federal jurisdiction over laws of nationwide applicability.

Anderson also maintains that *Begay* and *Burns* are not persuasive because the defendants in those cases did not live in a state listed in § 1162 and so were not affected by it. However, we rejected a similar argument in *Burns*. 529 F.2d at 117 & n. 2 (declining to distinguish *United States v. Three Winchester 30–30 Caliber Lever Action Carbines*, 504 F.2d 1288 (7th Cir.1974), on the ground that it arose in Wisconsin, which is a listed state, whereas *Burns* arose in Idaho, a non-listed state).

Finally, Anderson submits that federal jurisdiction over activity occurring on Indian lands must be limited in light of the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). His argument is premised on the view that Congress granted exclusive jurisdiction over criminal conduct in Indian country to the states listed in § 1162 and so cannot interfere with a state's authority to regulate conduct within its borders. As we have held that § 1162 has no such effect, *Lopez* is not implicated at all.

**4.** The Eighth Circuit has reached a similar conclusion. *See United States v. Pemberton*, 121 F.3d 1157, 1164 (8th Cir.1997) (holding that "[c]rimes of general applicability—that is, actions that Congress has declared illegal regardless of where they occur—are not affected by the enactment of [§ 1162] and remain within the subject-matter jurisdiction of

the federal courts."); *United States v. Stone*, 112 F.3d 971, 973 (8th Cir.1997) (explaining that the state of Minnesota did not have exclusive jurisdiction over a charged offense that was not enumerated in § 1153 and was a crime of general applicability not within the purview of § 1152).

This leaves the question whether Anderson was convicted of violating laws of nationwide applicability. We have already held that § 371, the general conspiracy statute, is not a federal enclave law because situs has nothing to do with the crime and Indians are not excluded from its application. *Begay,* 42 F.3d at 499–500. Section 1163, which textually applies to "whoever" steals money or property from an Indian tribal organization, likewise applies to everyone without regard to location. It has no situs requirement and situs is not an element that the government must prove. Anderson suggests that the offenses charged are affected by federal enclave laws because the theft occurred on Robinson Rancheria and involved its property, but this is fortuitous. Tribal funds or property could be any place. While Anderson committed some acts in furtherance of the kickback scheme on the reservation, he could have been convicted of the same offense had all of the acts taken place off the reservation. As a result, we join the Eighth Circuit in holding that § 1163 applies without regard to where the defendant or the tribal assets are located at the time of the offense. *See United States v. McGrady,* 508 F.2d 13, 16 (8th Cir.1974) (explaining that § 1163 makes actions criminal regardless of where committed); *United States v. Wadena,* 152 F.3d 831, 842 (8th Cir.1998) (concluding that misappropriation of tribal funds in violation of § 1163 is not an enclave law).

In sum, § 1162 does not give the states listed in the statute exclusive jurisdiction over federal offenses that arise under federal laws of general applicability. Neither § 371 nor § 1163 has situs as an element; therefore, they are not enclave laws. Both are crimes of nationwide applicability that are unaffected by § 1162's grant of jurisdiction to California. Accordingly, the district court did not lack subject matter jurisdiction over the charges against Anderson.

## III

■ In a related argument, Anderson maintains that Congress's attempt to regulate the conduct falling within § 1163 exceeds its authority under the Indian Commerce Clause and the Interstate Commerce Clause. However, this argument also turns on the view that § 1162 vests California with exclusive criminal jurisdiction over its tribal lands, which, as we have explained, it does not do. In addition, we have upheld the constitutionality of both §§ 1153 and 1152 against an Indian Commerce Clause challenge. *United States v. Lomayaoma,* 86 F.3d 142, 145–46 (9th Cir.1996) (the Major Crimes Act); *United States v. Keys,* 103 F.3d 758, 762 (9th Cir.1996) (the Federal Enclave Act). If it is within Congress's power to regulate crimes committed by or against an Indian in Indian country, then Congress did not exceed its power under the Indian Commerce Clause by making it a crime for anyone, including an Indian, to steal funds or property of an Indian tribal organization. Finally, as the Indian Commerce Clause is the broader provision and no issue of state sovereignty is involved, § 1163 does not offend the Interstate Commerce Clause either. *See Lomayaoma,* 86 F.3d at 144–45 (discussing the impact of *Lopez* and *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), on the Indian Major Crimes Act, and finding none).

## IV

■ Alternatively, Anderson contends that § 1163 does not apply to tribal members, and that he cannot be prosecuted under § 1163 because he is a tribal member of the same tribe from which he stole.

He posits that if Congress had intended the statute to apply to Indians, it would have expressly said so. We disagree for reasons well-stated by the Tenth Circuit Court of Appeals in *United States v. Palmer*, 766 F.2d 1441, 1444 (10th Cir. 1985). *United States v. Jackson*, 600 F.2d 1283 (9th Cir.1979), upon which Anderson relies, is distinguishable because the legislative history showed that Congress intended to exclude Indians from prosecution under the statute there at issue, 18 U.S.C. § 1165, which criminalized hunting on a reservation. Here, as *Palmer* details, the focus of § 1163 was to protect tribal organizations from the actions of dishonest tribal officials. 766 F.2d at 1444. Accordingly, we conclude that "whoever" includes anyone and everyone, including Indians.

AFFIRMED.