**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JEFF LIVINGSTON,
*Defendant-Appellant*.

No. 11-10520

D.C. No.
1:09-cr-00273-
LJO-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted
April 15, 2013—San Francisco, California

Filed August 7, 2013

Before: Susan P. Graber and Morgan Christen, Circuit
Judges, and John R. Tunheim,* District Judge.

Opinion by Judge Christen

---

* Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

## SUMMARY[**]

---

### Criminal Law

The panel affirmed convictions for mail fraud (18 U.S.C. § 1341) and theft by an officer or employee of a gaming establishment on Indian lands (18 U.S.C. § 1168(b)).

The panel held that the location of the gaming establishment is not an element of the offense under § 1168(b), and that the allegations in the indictment were sufficiently specific to apprise the defendant of the specific offenses with which he was charged.

The panel also held that the district court's jury instructions correctly defined "intent to defraud," and that the district court did not abuse its discretion by admitting prior acts evidence under Fed. R. Evid. 404(b).

---

### COUNSEL

Ann C. McClintock (argued), Assistant Federal Defender, and Daniel J. Broderick, Federal Defender, Sacramento, California, for Defendant-Appellant.

Kirk E. Sherriff (argued), Assistant United States Attorney, and Benjamin B. Wagner, United States Attorney, Fresno, California, for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

CHRISTEN, Circuit Judge:

Jeff Livingston appeals his convictions for mail fraud (18 U.S.C. § 1341) and theft by an officer or employee of a gaming establishment on Indian lands (18 U.S.C. § 1168(b)). Livingston argues that, in prosecutions under § 1168, the government must prove the gaming establishment is actually located on Indian lands. Because this purported element of the offense was not alleged in the indictment or included in the jury instructions, Livingston maintains that his conviction must be reversed. Livingston also argues that the indictment did not adequately allege mail fraud and that the jury instructions did not correctly define "intent to defraud." Finally, Livingston argues the district court erred by admitting evidence of prior acts pursuant to Federal Rule of Evidence 404(b).

We have jurisdiction pursuant to 28 U.S.C. § 1291. We conclude the location of the gaming establishment is not an element of the offense under 18 U.S.C. § 1168(b) and that the indictment adequately alleged mail fraud and theft by an officer or employee of a gaming establishment on Indian lands. We see no error in the jury instructions or in the admission of the prior acts evidence under Rule 404(b). We affirm Livingston's convictions.

## I.  BACKGROUND

### A.  Statutory Background

Section 1168 provides criminal penalties for officers, employees, or licensees who steal from gaming

establishments "operated by or for or licensed by an Indian tribe pursuant to an ordinance or resolution approved by the National Indian Gaming Commission." 18 U.S.C. § 1168(b). The statute is titled "Theft by officers or employees of gaming establishments on Indian lands."

Section 1168 is part of the Indian Gaming Regulatory Act ("IGRA"). Pub. L. No. 100–497, 102 Stat. 2487 (1988). IGRA regulates tribal gaming activity on Indian lands. 25 U.S.C. §§ 2701(1), 2701(3), 2702(2), 2702(3). To facilitate IGRA's objectives, Congress established the National Indian Gaming Commission ("Commission"). 25 U.S.C. §§ 2702(3), 2704.

IGRA requires that an Indian tribe have a Commission-approved gaming ordinance or resolution before offering certain classes of gaming activity. 25 U.S.C. § 2710(b), (d). Even though IGRA "limits tribal gaming to locations on 'Indian lands,'" *N. Cnty. Cmty. Alliance v. Salazar*, 573 F.3d 738, 741 (9th Cir. 2009), a proposed ordinance need not specify the location of a proposed gaming establishment, *id.* at 746, and the Commission is not obligated to make an Indian lands determination as part of the process of approving a proposed ordinance, *id.* at 748.

## B.  Factual and Procedural Background

Livingston was the general manger of the Chukchansi Gold Resort and Casino from May 2005 through January 2008. Chukchansi Gold is owned and operated by the Picayune Rancheria of the Chukchansi Indians. Chukchansi Gold's gaming ordinance was approved by the Commission "for gaming only on Indian lands."

Livingston was indicted in July of 2009 on two counts of theft by an officer of a gaming establishment on Indian lands under 18 U.S.C. § 1168(b).  The original indictment alleged that Livingston used a Chukchansi Gold credit card to purchase a personal vacation and to make a down payment on a personal vehicle. Before trial, Livingston orally moved to dismiss the indictment.  He argued the government would be unable to prove Chukchansi Gold was operated pursuant to a Commission-approved ordinance because it would be unable to prove that Chukchansi Gold is actually located on Indian lands.  The district court denied the motion to dismiss because it was unclear what the government would be able to prove at trial.  The first jury deadlocked.

Before the case was re-tried, Livingston moved again to dismiss the indictment on the same general grounds.  The district court's order denying the second motion to dismiss reviewed the title history of the relevant land and concluded that Livingston had not met his burden of showing that the government would be unable to prove that Chukchansi Gold was operated pursuant to a Commission-approved ordinance. But the district court also ruled that, at trial, the government would have to prove beyond a reasonable doubt that the Chukchansi Gold casino is located on Indian lands.  In ruling that this proof would be required, the district court apparently reasoned that Chukchansi Gold's ordinance was approved "for gaming only on Indian land."

The government filed a superseding indictment in September 2010 alleging a third violation of § 1168(b) based on Livingston's use of a Chukchansi Gold credit card to purchase sports and music memorabilia.  It also alleged six counts of mail fraud.  Livingston moved to dismiss the superseding indictment on the ground that it was

insufficiently specific with respect to the mail fraud counts. He also renewed his argument that the indictment should be dismissed because it did not allege that the Chukchansi Gold casino is on Indian lands. The district court concluded the mail fraud counts were alleged with sufficient specificity and that the location of the casino is not a separate element of § 1168(b). The case went to trial a second time and a jury convicted Livingston on all counts.

## II. DISCUSSION

### A. Sufficiency of the Indictment

On appeal, Livingston argues the superseding indictment was insufficient because it did not allege that the Chukchansi Gold casino is on Indian lands, did not provide adequate notice of one of the alleged violations of § 1168(b), and did not provide sufficient notice of the mail fraud charges.

We review the sufficiency of an indictment de novo. *United States v. Milovanovic*, 678 F.3d 713, 719 (9th Cir. 2012) (en banc).

> An indictment must provide the defendant with a description of the charges against him sufficient to (1) enable him to prepare his defense; (2) ensure him that he is being prosecuted on the basis of facts presented to the grand jury; (3) enable him to plead double jeopardy against a later prosecution; and (4) inform the court of the facts alleged so that it can determine the sufficiency of the charge.

*United States v. Bohonus*, 628 F.2d 1167, 1173 (9th Cir. 1980). "To satisfy these requirements, the indictment must allege the elements of the offense charged and the facts which inform the defendant of the specific offense with which he is charged." *Id.* (citing *Hamling v. United States*, 418 U.S. 87, 117–18 (1974)).

### 1. Theft from a gaming establishment on Indian lands

#### a. Elements

We first consider whether § 1168(b) requires proof that the gaming establishment is located on Indian lands, and we begin that inquiry by examining the language of the statute. *See United States v. Johnson*, 680 F.3d 1140, 1144 (9th Cir. 2012).

The text of § 1168(b) requires only that the gaming establishment be operated pursuant to a Commission-approved ordinance or resolution. Livingston argues the title of the statute, "Theft by officers or employees of gaming establishments on Indian lands," creates an ambiguity when juxtaposed against the statutory language. But because the statute itself is unambiguous, its title is immaterial. *See Carter v. United States*, 530 U.S. 255, 267 (2000) ("[T]he title of a statute is of use only when it sheds light on some ambiguous word or phrase in the statute itself." (internal quotation marks and alterations omitted)).

Livingston also argues that the location of the gaming establishment is an implicit jurisdictional element of § 1168. We do not agree that congressional authority to criminalize theft from a tribal gaming establishment derives from the

location of the gaming establishment.  The Indian Commerce Clause "provide[s] Congress with plenary power to legislate in the field of Indian affairs." *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 192 (1989).  Section 1163 of Title 18 criminalizes embezzlement and theft from Indian tribal organizations.  18 U.S.C. § 1163.  In *United States v. Anderson*, 391 F.3d 1083, 1087 (9th Cir. 2004), we held that § 1163 regulates conduct within the scope of the Indian Commerce Clause.  *Anderson* relied on cases upholding the Major Crimes Act (18 U.S.C. § 1153) and the Federal Enclave Act (18 U.S.C. § 1152) as legitimate exercises of congressional authority under the Indian Commerce Clause. 391 F.3d at 1087 (citing *United States v. Lomayaoma*, 86 F.3d 142, 145–46 (9th Cir. 1996), and *United States v. Keys*, 103 F.3d 758, 762 (9th Cir. 1996)).  *Anderson* reasoned that, "[i]f it is within Congress's power to regulate crimes committed by or against an Indian in Indian country, then Congress did not exceed its power under the Indian Commerce Clause by making it a crime for anyone, including an Indian, to steal funds or property of an Indian tribal organization." *Id.*

Because Congress's authority under the Indian Commerce Clause extends to theft from tribal organizations generally, it also extends to theft by an officer from a gaming establishment operated or licensed by an Indian tribe. Therefore, federal jurisdiction does not depend on proof that the gaming establishment at issue in a § 1168(b) prosecution is located on Indian lands.

Livingston also argues that § 1168(b) requires proof that the gaming establishment is on Indian lands because it is part of an overarching statutory scheme that applies only to tribal gaming activity on Indian lands.

Livingston is correct that IGRA "limits tribal gaming to locations on 'Indian lands,'" *N. Cnty.*, 573 F.3d at 741,[1] but "[t]he starting point in discerning congressional intent is the existing statutory text." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004). The text of § 1168(b) only requires the government to prove tribal operation or licensing of the gaming establishment pursuant to a Commission-approved ordinance or resolution. Unless the plain language of a statute leads to an absurd or unconstitutional result, the court's function is to enforce the statute according to its terms. *See id.* Plainly, Congress required proof of Commission approval, not proof of a gaming establishment's location.

Livingston argues that the plain language of the statute is inconsistent with IGRA's statutory framework, which applies to gaming activity on Indian lands. Even if the statute's requirement of proof of Commission approval, rather than proof of the gaming establishment's location, could theoretically result in prosecutions under § 1168(b) for thefts from gaming establishments *not* located on Indian lands, *see N. Cnty.*, 573 F.3d at 747 (noting that a tribe could obtain approval of a non-site-specific gaming ordinance and then theoretically build a gaming facility on non-Indian lands), that result would not be "absurd" because it would not be inconsistent with IGRA's limitations on gaming activity. We are not persuaded by Livingston's argument that IGRA's

---

[1] "Tribal gaming on non-Indian lands is not authorized by or regulated under IGRA." *N. Cnty.*, 573 F.3d at 744 (citing Facility License Standards, 73 Fed. Reg. 6019–01, 6022 (Feb. 1, 2008)). "Gaming that does not take place on Indian lands is subject to all state and local gambling laws and federal laws *apart from IGRA*." 73 Fed. Reg. at 6022 (emphasis added).

statutory framework requires proof of the gaming establishment's location for prosecutions under § 1168(b), in contravention of the statute's plain terms.

We conclude that the location of the gaming establishment is not an element of § 1168(b) and, accordingly, that the government did not have to allege the location of the Chukchansi Gold casino in the indictment.

### b.  Sufficiency of notice

Livingston separately argues that the superseding indictment insufficiently alleged one violation of § 1168 because it did not inform him of precisely what property was stolen, or when.  Count 9 of the superseding indictment alleged that between October 2007 and December 2007, Livingston "use[d] a Chukchansi corporate credit card to purchase, and caus[ed] Chukchansi to pay for, sports and music memorabilia for [his own] personal benefit." Livingston argues that the indictment was deficient because it did not identify what sports and music memorabilia was purchased, and because he may have been convicted for conduct that was not presented to the grand jury.

"[T]he test of sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000). Here, the indictment conformed to constitutional standards because it alleged a narrow, three-month window during which the theft allegedly took place, it identified the items purchased as "sports and music memorabilia," and it identified the alleged method of payment—a company credit card.  The indictment alleged all elements of § 1168 and

sufficiently specific factual content to apprise Livingston of the specific offense with which he was charged.

### 2. Mail fraud

Livingston argues the indictment contained only conclusory statements supporting the mail fraud charges and that it failed to provide notice of his allegedly illegal conduct. He also argues that, because the mail fraud allegations were not sufficiently specific, it is unclear whether the jury convicted him on the same evidence the grand jury relied upon to indict him.

To support this argument, Livingston relies primarily on *United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979) (per curiam), and a Tenth Circuit case, *United States v. Curtis*, 506 F.2d 985 (10th Cir. 1974). *Cecil* involved a "rather barren" indictment that tracked the text of the relevant conspiracy statutes and made "only two specific allegations concerning the conspiracies"—the locations of the conspiracies and the names of co-conspirators. 608 F.2d at 1296–97. The indictment in *Curtis* did not identify the scheme to defraud or the false and fraudulent pretenses or representations alleged by the government. 506 F.2d at 989. Because the indictment was "vague" and "confusing," the Tenth Circuit concluded "the grand jury may have had a concept of the scheme essentially different from that relied upon by the government before the trial jury." *Id.*

In contrast to *Cecil*, the superseding indictment in this case alleged that, "[w]hile he was Chukchansi's general manager, the defendant engaged in a scheme to defraud Chukchansi by making a series of personal purchases, for the benefit of himself and other private individuals, using

Chukchansi money." In other words, the superseding indictment alleged that Livingston used company funds to make personal purchases. It identified "vacation travel, down payments on personal vehicles, golf packages, jewelry, and autographed sports and music memorabilia" as the relevant purchases. The superseding indictment described the means by which Livingston carried out the scheme as "using his Chukchansi corporate credit card, using a staff member's corporate credit card, and by . . . having Chukchansi billed for . . . items." The indictment also identified six specific mailings—checks and credit card statements—underlying each of the six counts of mail fraud.

In contrast to the indictment in *Curtis*, the superseding indictment in this case was not vague or confusing. It generally alleged that Livingston devised a scheme to defraud or to obtain money by means of false pretenses, but it also described the scheme in constitutionally adequate factual detail. Assuming the truth of the indictment's allegation that Livingston "purported to make [the personal] purchases for the benefit of Chukchansi," *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982), the pretenses for the purchases were false. Livingston argues that the indictment did not identify whether any pretense was explicit, but false pretense was necessarily implied by use of the company credit card to make personal purchases. Finally, each mail fraud count was supported in the indictment by a description of a check or credit card statement.

When "read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied," *United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985), the superseding indictment alleged the elements of mail fraud with adequate factual detail to put

Livingston on notice of the specific offenses with which he was charged. There is no danger that the trial jury had a different concept of Livingston's scheme than the grand jury.

## B. Jury Instructions

Livingston challenges the jury instructions on two grounds. First, he argues that the district court did not instruct the jury that the location of the gaming establishment is an element of § 1168. Second, he argues that the district court erred by declining to instruct the jury that mail fraud requires a finding of intent to cause financial harm.

"Whether a jury instruction misstates elements of a statutory crime is a question of law reviewed de novo." *United States v. Romo-Romo*, 246 F.3d 1272, 1274 (9th Cir. 2001) (internal quotation marks omitted).

### 1. Theft by an officer of a gaming establishment on Indian lands

Because we conclude that the location of the gaming establishment is not an element of § 1168(b), we reject Livingston's contention that the district court erred by not instructing the jury that the government had the burden of proving the gaming establishment was on Indian land.

### 2. Mail fraud

Livingston argues that the district court's mail fraud instruction was erroneous because it did not require the jury to find that he acted for the purpose of causing financial loss to another. The district court's mail fraud instruction defined "intent to defraud" as "the intent to deceive or cheat,"

consistent with Ninth Circuit Model Criminal Jury Instructions § 3.16. In *United States v. Treadwell*, 593 F.3d 990 (9th Cir. 2010), we upheld an identical instruction in the context of wire fraud and explained that intent to cause pecuniary harm is not required. *Id.* at 994, 996–99. Livingston's argument can be resolved on the same grounds; the district court correctly defined "intent to defraud." *Id.* at 998–99; *see also United States v. Shipsey*, 363 F.3d 962, 967–68 (9th Cir. 2004) (identical instruction "correctly defined intent").

## C.  404(b) Evidence

"Evidentiary rulings admitting evidence of other acts under Federal Rule of Evidence 404(b) are reviewed for an abuse of discretion, but whether the evidence of other acts is relevant to the crime charged is reviewed de novo." *United States v. Castillo*, 181 F.3d 1129, 1134 (9th Cir. 1999) (citation omitted).

Federal Rule of Evidence 404(b)(1) prohibits evidence "of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But Rule 404(b)(2) permits introduction of such evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Here, the government presented evidence that Livingston purchased a golf bag and a football helmet with Chukchansi funds for his own personal use. Before trial, the district court ruled that this evidence was relevant to intent and to absence

of mistake. The court admitted the evidence pursuant to Rule 404(b).

Livingston argues that the government did not establish at trial that the golf bag and football helmet were stolen and therefore the prior act evidence was irrelevant. We disagree. Livingston admitted to purchasing the items with a Chukchansi Gold credit card and testified that the items were delivered to him personally. Livingston also specifically testified that he brought the football helmet and golf bag back to the casino and gave them to the marketing department.

A former Chief Financial Officer of the Chukchansi Gold casino, Bruce King, testified that the casino never received the football helmet. King further stated that Livingston never mentioned his purchase of the helmet, and that the helmet was expensive enough that it would have been reflected on the casino's balance sheet if it had been purchased for, and received by, the casino. King also testified that he was unaware of the casino receiving the golf bag and that a number of employees would have been interested in the golf bag because they were golfers.

Howard Davies, a casino investigator, testified that he did not find the football helmet or the golf bag when he searched the Chukchansi Gold casino. In addition to physically searching many areas of the casino, including the marketing department, Davies interviewed people at the casino and testified that Livingston claimed he left the items at the auction where he purchased them.

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."

Fed. R. Evid. 401.  The trial testimony of Livingston, King, and Davies had a tendency to make it more probable that Livingston purchased the football helmet and the golf bag and took them for his own use.  Those facts were of consequence to the action insofar as they tended to show that Livingston intended to use Chukchansi funds to purchase items for his own use rather than doing so mistakenly.  Fed. R. Evid. 404(b).  The district court did not abuse its discretion by admitting prior acts evidence regarding the football helmet and golf bag.

## III.  CONCLUSION

The location of the gaming establishment is not an element of the crime under 18 U.S.C. § 1168(b).  The superseding indictment gave sufficient notice of each count of theft from a gaming establishment on Indian lands and of mail fraud, and the jury instructions correctly defined both crimes.  The district court properly allowed the evidence of prior acts.

The judgment of the district court is **AFFIRMED.**